158 U.S. 172 (1895)
TEALL
v.
SCHRODER.
No. 272.
Supreme Court of United States.
Argued April 9, 1895.
Decided May 6, 1895.
APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.
Mr. H.M. Foote for appellants. Mr. George H. Sears and Mr. F.P. Dewees were with him on his brief.
*173 Mr. S.F. Leib for appellees. Mr. M.M. Estee was with him on his brief.
MR. JUSTICE FIELD delivered the opinion of the court.
This is a suit in equity, brought in the Circuit Court of the United States for the Northern District of California, by Jane M. Teall, Timothy H. Teall, and Harvey Benedict, residents and citizens of the State of New York, against A. Schroder and three hundred and thirty-four other defendants, residents and citizens of the State of California, to enforce the transfer by them to the complainants of certain lands described in the bill of complaint, situated in the city of San José in that State, and represented as covering a large part of the city. There are various charges made as to the manner in which the defendants came into possession of the property, imputing fraudulent conduct on their part, and invoking the interposition of the equity powers of the court for its correction.
The bill was filed on the 1st of June, 1889, and represents that the complainants are residents and citizens of the State of New York, and have never been in California, and that the defendants are residents and citizens of California; that one Oliver Teall, stated to be the ancestor of the complainants, was, on the first day of August, 1857, the owner and in possession of certain real property, situated in the city of San José, county of Santa Clara in the latter State, more particularly described as certain pieces or parcels of land and town lots, designated by certain numbers in blocks, on the official map or plat of the city; and alleges that on the 2d day of February, 1852, he executed and delivered to one Davis Devine an instrument of writing appointing him his attorney in fact, and authorizing him in his, Teall's, name and to his use to enter upon and take possession of all lands, tenements, and hereditaments in the State of California to which he then was or might thereafter become entitled, or in which he was or might become interested, and in his name to grant, bargain, and sell, or to lease and demise the same, or any parcel thereof, *174 for such sum or price as to him, Devine, might seem meet, and to execute good and sufficient deeds of conveyance by quitclaim for the same.
That power of attorney was duly acknowledged and filed for record in the office of the recorder of the county of Santa Clara on the 16th day of March, 1852, and has ever since remained on the records of the county, and was unrevoked and in full force until the death of Teall on the 12th day of August, 1857.
The bill further alleges that prior to the first day of August, 1857, Devine, as attorney in fact of Teall and pursuant to the authority thus vested in him, took possession of all the premises mentioned, and continued in possession thereof until his death; that in violation of the trust reposed in him, on a day and date unknown to the complainants, but while in possession of the premises as the attorney in fact of Teall, he caused the whole of the premises to be conveyed to himself in the following manner, to wit: "Pretending to act as attorney in fact of Teall, he executed and delivered to one A.L. Rhodes a deed of release and quitclaim of all of the premises, bearing date as of the 1st day of August, 1857, and reciting a consideration of $5000, and that on the same day said A.L. Rhodes, by a similar deed, with a similar consideration recited, reconveyed all of the premises to Devine; that the conveyances were acknowledged on the 17th day of September, 1857, and were recorded on the 8th day of October thereafter, and have ever since remained on the records of the county of Santa Clara."
The bill further alleges that the alleged conveyances, and each of them, were fraudulent and void as to Oliver Teall and those claiming under him; that no consideration passed from Rhodes to Devine, or from Devine to Rhodes therefor; that the same were not authorized by Teall, nor was any consideration paid to him therefor, nor was any ratification thereof ever made by him, but that the deeds were made solely for the purpose of enabling Devine to deal with and dispose of the property as his own, and to defraud Teall and those claiming under him out of the property.
*175 The bill further alleges that on the 12th day of August, 1857, Teall died in the city of Syracuse, in the State of New York, of which place he had for many years been a resident; and also upon information and belief, that the conveyances from Devine to Rhodes and from Rhodes to Devine were not executed upon the dates borne by them respectively, but were executed after the death of Teall, on the 17th of September, 1857; that during all this time the premises were and still are within the boundaries of the former pueblo of San José de Gaudalupe, and are included in the pueblo and its successor, the city of San José, a municipal corporation organized under the laws of California, and that the constituted authorities thereof, by virtue of a grant of the Mexican government, made prior to the cession of California to the United States, held the premises in trust for persons in possession or entitled to the possession thereof; that on the 4th of June, 1884, letters patent of the United States were issued to the mayor and common council of the city of San José, as the constituted authorities of the city, for the premises under the trust mentioned, and that the legal title is now held by the patentee, except as the same has been conveyed to others by those authorities and their predecessors; that all the defendants, except the mayor and common council of the city of San José, have entered upon and are now in possession of portions of the premises by virtue of conveyances from Devine made subsequently to the record of the conveyance to him by Rhodes.
It is apparent from the development of the facts in this case that the allegations of fraud on the part of Rhodes and Devine, as set forth in the bill, are made, not upon any knowledge of facts, showing such fraud, by the complainants, but upon surmises or conclusions inferred by them from the circumstance that no conveyance of the premises in controversy appears of record from Devine to Oliver Teall after the execution by the latter of the power of attorney to him, or to any other person for Teall's benefit.
As appears from the admitted allegations of the bill and the proceedings in the case, Oliver Teall, after the execution of his power of attorney to Devine, but on what particular day *176 is not stated, removed from the State of California to Syracuse in the State of New York, and there resided until his death on the 12th of August, 1857. But it does not appear from anything disclosed in the record or proceedings that he ever revoked in the meantime the power of attorney to sell his property, executed by him to Devine, or that Devine ever communicated with the complainants respecting the property of which he had been constituted an attorney in fact to sell or lease, or that he made any sales or leases thereof for Teall or remitted to him any money on their account. All that can be learned from the record in this case is that after the departure of Teall from California to New York he never exercised any control over any of the property, or made any improvements thereon or executed any leases or made any sales thereof, or claimed any right to exercise any such control. It appears that after his removal, Devine claimed to be the owner of the premises in San José, respecting which the power of attorney purported to be issued, and managed and controlled the same as absolute owner thereof, and, so far as disclosed, that no one ever called in question his right as owner. In the meantime, and during the several years of Devine's residence in San José, from 1852 until his death in 1876, a period of twenty-four years, the city of San José greatly increased in population and wealth, from a small town to a city of over 30,000 inhabitants, embracing many large houses and public buildings, and was noted for the beauty of its scenery, and the healthfulness of its climate. From these advantages it naturally became an attractive place of residence in the State, and was the seat of many institutions of learning. During this period the title of the city, which rested upon an alleged Mexican grant of several leagues, was investigated by the authorities of the United States, and finally confirmed under the act providing for the settlement of private land claims in California, and a patent of the United States was issued to the municipal authorities of the city as the successors of the pueblo, for the lands embraced within its boundaries, and under such patent the title was vested in parties in possession of the property under conveyances from Devine *177 executed after the power of attorney was issued to him by Teall. The titles conferred by such conveyances from the pueblo authorities have always been respected and maintained. Whilst the property in controversy, consisting of several hundred different parcels of land in the city of San José, and county of Santa Clara, remained in the possession of Devine or parties claiming by conveyances from him, without any disturbance of their asserted title and any question of its validity, and thirty-two years after the death of Teall and fourteen years after the death of Devine, when the circumstances attending the acquisition of the title to the property involved had passed from the recollection of the survivors or successors of the claimants, consisting of numerous individuals, partnerships, companies, and corporations, numbering in all three hundred and thirty-seven defendants, the present suit was brought to obtain a transfer to the complainants of the property held by parties claiming under Devine, with allegations of fraudulent conduct on the part of some of the parties, which we have mentioned, the better to enable the complainants to invoke the equity jurisdiction of the court for their protection.
To the bill the defendants, appearing in different sets, demurred, alleging as grounds of demurrer that more than thirty-one years had elapsed since the alleged causes of complaint accrued to the complainants and those under whom they claim, whereby the causes of complaint had become barred by the statute of limitations of the State, and had also become stale under the general rules of equity jurisprudence.
The law of the State creating the limitations, to which particular reference was made, is found in section nineteen of the act defining the time for commencing civil actions, passed April 22, 1850; and in subdivision four of section 338 of the Code of Civil Procedure of California; and further, it was contended that the alleged causes of complaint had become stale because of the lapse of time, according to the general principles of equity, and that the complainants had been guilty of laches in failing to attempt the enforcement of the same at the proper time, and it was insisted that so long a time had passed since the matters took place, that it would be contrary to equity and *178 good conscience for the court to take cognizance thereof, and to require any answer to them. Section nineteen of the act of April 22, 1850, reads as follows: "An action for relief, not hereinbefore provided for, must be commenced within four years after the cause of action shall have accrued." This section applies specifically to actions for equitable relief. Other sections of the act provide for the limitation of actions at law. Subdivision four of section 338 of the Code of Civil Procedure is as follows: "An action for relief on the ground of fraud or mistake must be brought within four years after the cause of action accrues; the cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."
The power of attorney from Teall to Devine was on record from March, 1852, and open to the daily inspection of the complainants and of all parties interested in the title to the property. They could have ascertained, by inquiry, from Teall at any time previous to his death, and from many others afterwards, the character of the title and the reasons why the property was allowed to remain in its then condition and under the control of an attorney in fact of Teall. And the conveyances from Devine to Rhodes and from Rhodes to Devine, which are stated in the bill to have been made previous to August 1, 1857, were placed on record on the 8th of October, 1857, and remained on record ever afterwards, open to the inspection of all parties desirous of obtaining information respecting their execution or the property to which they related. As the complainants and all other parties interested could have obtained the necessary knowledge upon those subjects by proper inquiries, they are charged with such knowledge from the time those conveyances were placed on record, and held to all the consequences following its acquisition.
The court below was of opinion that these grounds of demurrer were well taken, and sustained them, and ordered the suit to be dismissed. From this decree sustaining the demurrer and dismissing the bill, the present appeal was brought to this court.
Aside from the general considerations, upon which the dismissal *179 of the suit must be maintained in a court of law or equity, from the fact that the statute of limitations of California bars the action, whether brought at law or in equity, there are other considerations arising upon the facts stated which show that the complainants were barred from all relief when this suit was instituted. It is evident that Devine considered himself and acted as owner of the property, after the conveyance made to him by Rhodes, to whom he had conveyed the same under the power of attorney from Teall.
Wherever property is claimed by one as owner, and he exercises acts of ownership over it, and the validity of such acts is not questioned by his neighbors until after the lapse of many years, when the statute of limitations has run, and those who, for any apparent defects in the title of the property, would naturally be most deeply interested in enforcing their claims, make no objection thereto, a fair presumption arises, from the conduct of the parties, that the title of the holders and claimants of the property is correctly stated by them.
In the present case it appears that Teall, represented as having the title, executed a power of attorney to his son-in-law, Devine, and subsequently left the State of California and settled in Syracuse, New York, leaving the property in the hands of his son-in-law in California, who afterwards claimed to be the owner thereof and exercised acts of ownership over it, unquestioned by any one, and no subsequent claim being made to the ownership by Teall or by any relative of his, not even so far as to pay or offer to pay any taxes on the property, and many years having elapsed, covering the period prescribed by the statute of limitations for instituting suits for its recovery, and rights of property to large numbers having accrued thereunder, it may be fairly presumed by the courts that the statement of the party thus exercising unquestioned ownership was correct. The holding of property under a claim of ownership for many years operates to confer a title by adverse possession, which the courts, in the interest of the peace of the community and of society generally, will not permit to be disturbed.
It is suggested, and the suggestion is a reasonable one, that Devine was really the owner of the property, although, in *180 view of the many questions arising under the Mexican law as to the actual condition of the title of the land covered by the grant to the pueblo previous to its confirmation, he took the precaution, which at the time was deemed wise, to act as the attorney of the ostensible owner rather than as the actual owner, and that subsequently a deed was transmitted to Teall for execution, conveying the title in fee to Devine in the place of the power of attorney. But, as stated, news of his sickness having been received by Devine, it was thought best to convey the title to Rhodes, who subsequently could convey it to Devine in case a deed was not received from Teall before his death. This may seem to be a strained view of the case, but considering the silence which Teall and his relatives observed respecting the property, the refusal of every one who might claim under him if he continued in possession of a valid title to take part in any attempt to disturb Devine's title, and the continued management and control of the property by the latter for twenty-four years, it does not make the suggestion at all improbable.
Whether this be true or not, the right of Devine, after so many years of undisputed and notorious possession of the property, with a claim of its ownership shuts out, under the statute of limitations of California, the claims of all other persons either to its possession or ownership.
Decree affirmed.