People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts, v. Union Bank of Chicago et al.

Anton J. Johnson, Appellant, v. Harry R. Spellbrink, Receiver of Union Bank of Chicago, Appellee.

Gen. No. 41,459.

Opinion filed February 17, 1941.

JOHN M. TREVEILER and J. LAWRENCE HOLLERAN, both of Chicago, for appellant; GEORGE J. DITCHIE, of Chicago, of counsel.

SCHUYLER & HENNESSY, of Chicago, for appellee; THEODORE E. ZAHLER and DANIEL M. SCHUYLER, both of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

In 1932 the Union Bank of Chicago, a corporation, was being liquidated by the Auditor of Public Ac-

counts and a receiver was appointed. About the same time the Chicago Bank of Commerce was also being liquidated in a similar proceeding and a receiver named. February 6, 1940, Anton J. Johnson, by leave of court, filed his verified intervening petition in which he prayed that his claim against the Union bank be allowed and that a summons issue against the receiver of the Bank of Commerce to appear and answer the petition. Whether the summons issued and whether the receiver of the Bank of Commerce came into court does not appear. The receiver of the Union Bank of Chicago filed his motion to dismiss the petition specifying a number of grounds. The motion was allowed, the petition dismissed and this appeal followed.

The substance of the allegations of the intervening petition, so far as it is necessary to state is that petitioner, Anton J. Johnson, from 1906 had been a customer of the Union Bank of Chicago and about the month of February, 1927, he purchased from the bank 230 bonds having an aggregate face value of $150,000, for which he paid the face value in cash to the bank; that the bonds were made by A. J. Johnson & Sons Furniture Company, a corporation, secured by a trust deed dated January 18, 1927 and recorded February 9, 1927 in the Recorder's office of Cook county; that the Union bank, in order to induce Anton J. Johnson to purchase the bonds, represented that they were secured by a first mortgage on the buildings, building equipment described in a trust deed, and all manufacturing machinery of the furniture company but it is alleged that the payment of the bonds, in fact, was secured only by the real estate described in the trust deed and not by the machinery of the furniture company; that the machinery was worth $200,000 and the real estate described in the trust deed was known to the petitioner Johnson to be insufficient security for the payment of the bonds and he relied upon the representations made by the Union bank that the pay-

ment of the bonds was also secured by the machinery of the furniture company; that to induce petitioner to purchase the bonds from the Union bank, the bank said it would loan Johnson money and take the $150,000 bonds as collateral security. That shortly after the purchase of the bonds in February, 1927, the bank loaned Johnson $50,000 for which he gave his collateral note pledging the bonds; that the note has been renewed from time to time and is now held by the Chicago Bank of Commerce under an agreement entered into between it and the Union Bank of Chicago; that the bonds of the face value of $70,000 were paid by the furniture company; that afterward it went into bankruptcy and the machinery of the furniture company was sold but that it was not subject to the lien of the trust deed; that there is still $80,000 of the bonds due and unpaid and petitioner's note for $50,000 is due and unpaid; that the machinery of the furniture company was sold in September, 1936, in the bankruptcy proceeding of that company and upon receiving notice of the sale petitioner took it to the receiver of the Union bank (and deputy receiver of the bank of Commerce) who informed petitioner that the machinery had never been pledged as security for the payment of the $150,000 bonds; that the receiver said he would buy the machinery at the sale; that he made bids at that time but did not purchase the machinery, and thereupon the receiver requested petitioner not to take any legal action against either of the banks on his claim for fraud but promised that "the receivership estates would work the matter out somehow to the satisfaction of this petitioner"; that the receiver further stated that if petitioner were to file a claim against either of the two banks he would immediately reduce petitioner's collateral note to judgment and forfeit all of the collateral deposited as security for the note "and harass this petitioner with the balance of said judgment"; that the petitioner be-

lieved what the receiver said and relied upon it ''and was not advised as to his legal rights in this connection and in connection with said fraud until, to wit, the 20th day of November, 1939, when he first consulted a lawyer for this purpose; that the petitioner did not have any prior knowledge of the fact that the manufacturing machinery of the A. J. Johnson & Sons Furniture Company, a corporation, was not at any time security for the said bond issue.''

It is further alleged in the petition that on account of the fraud of the Union bank in selling the bonds as above stated, petitioner rescinded the sale of the bonds and the prayer was that his claim be allowed against the Union bank for $80,000, the amount of the furniture company's bond issue remaining unpaid; that his claim be set off against his collateral note held by the receiver of the Bank of Commerce, as above stated, and the balance due of the $80,000 after deducting the $50,000 collateral note be held to be secured by the trust deed given by the furniture company, and the two receivers be required to account for all collateral deposited by the petitioner as security for the payment of his $50,000 collateral note.

A copy of one of the furniture company's bonds and the trust deed were attached to and made a part of the petition. While the point is not made, we think it is not clear that the machinery was not covered by the trust deed.

One of the defenses interposed was the five-year statute of limitations; that the bonds were purchased in February, 1927, and the petition in the instant case not filed until February 6, 1940. But counsel for petitioner say that while the statute of limitations does not strictly apply to cases in equity that equity generally follows the law and denominates the period the statutes required to bar an action of laches that renders a demand stale. Laches will not apply in equity until the discovery of the fraud or until the

fraud could have been discovered by the exercise of reasonable diligence.

We think the statute of limitations was a good defense. *Skrodzki v. Sherman State Bank,* 261 Ill. App. 16, affirmed 348 Ill. 403; *Jackson v. Anderson,* 355 Ill. 550; *Keithley v. Mutual Life Ins. Co.,* 271 Ill. 584.

In the *Sherman State Bank* case, an action was brought against it based on its fraud and deceit in selling plaintiff bonds fraudulently representing that the payment of the bonds was secured by a first mortgage on real estate when, as a matter of fact, the mortgage securing the bonds was a second lien on the property. There was a verdict and judgment in plaintiff's favor for the amount of its claim but on appeal the judgment was reversed by this court and remanded. (261 Ill. App. 16.) Afterward the remanding order was stricken out and the case went to the Supreme Court where the judgment of this court was affirmed. In that case the bank filed a plea of the five-year statute of limitations to which plaintiff filed a replication averring that defendant fraudulently concealed the facts which constituted the fraud until less than five years before the suit was brought. Defendant's demurrer to the replication was overruled and it filed a rejoinder denying fraudulent concealment. There was a verdict and judgment in plaintiff's favor. We held the five-year statute of limitations was a bar and the court should have directed a verdict. We there referred to and discussed the *Keithley* case, 271 Ill. 584, and quoted from the opinion in that case, ''mere silence of the defendant is not sufficient'' to amount to concealment, and further, ''The doctrine announced in these decisions is, that the fraudulent concealment of a cause of action which will prevent the running of the Statute of Limitations must be some affirmative act or representation intended to prevent the discovery of the cause of action, which does actually prevent such discovery; that a replication setting up such

fraudulent concealment must set out the facts constituting the concealment; that the fraudulent misrepresentations which form the basis of the cause of action do not constitute a fraudulent concealment in the absence of allegations of acts or representations tending fraudulently to conceal the cause of action.'' In affirming the judgment of this court the Supreme Court, in passing on the question when concealment of the claimed fraud would toll the statute said: (348 Ill. 403) ''In *Lancaster v. Springer,* 239 Ill. 472, this section [22 of the Limitations act] was construed as follows: 'The concealment of a cause of action which will prevent the operation of the Statute of Limitations must be something of an affirmative character designed to prevent, and which does prevent, the discovery of the cause of action. . . . Such concealment must consist of affirmative acts or representations.' '' The court then cites cases, including the *Keithley* case which it discusses.

The Supreme Court, however, did not base its decision on the point just discussed but went further and held it was the duty of plaintiff to have examined the records in the recorder's office where the mortgage was recorded and to have ascertained that the mortgage securing his bonds was a second lien. The court there also said: ''The records of the recorder's office are public records and open alike to all parties. Appellant therefore had constructive notice of what those records contained. Whether such notice prevents the concealment of a cause of action has not been considered by this court but has by courts of other jurisdictions. In *Norris v. Haggin, supra,* [136 U. S. 386] where it was alleged that the original transaction which formed the basis of the cause of action was a fraud, the court, in considering the effect of the statutory provision of the State of California concerning concealment of a cause of action, makes this observation: 'It is a part of this general doctrine that to

avoid the lapse of time or Statute of Limitations the fraud must have been one which was concealed from the plaintiff by the defendant or which was of such a character as necessarily implied concealment. Neither of these principles can apply to the defendants in this case. The acts which constitute the fraud as alleged in the bill were open and public acts. The note and mortgage were recorded in the proper public office of the proper county. The possession of defendants was obtained by judicial proceedings which were open to everybody's examination and which were probably well known in the entire community.' " The court also quotes from *Teall v. Schroder,* 158 U. S. 172, to the same effect and continuing said: "And in this case, [Sherman State Bank case] though it is argued with force that the payment of interest constituted specific acts of fraudulent concealment of the existence of action, yet, the public records being open to appellant, he must be held charged with the knowledge of what they contained, and it could not be said, therefore, that acts on the part of the appellee, though attempts to conceal the cause of action, could accomplish that purpose."

In the instant case petitioner Johnson was apparently a man of business affairs. In February, 1927, he purchased $150,000 worth of bonds from the Union bank paying for them in cash. About that time he borrowed $50,000 and put up his collateral notes secured by these bonds. The Union bank was placed in liquidation by the Auditor of Public Accounts June 24, 1932. Afterward the furniture company went into bankruptcy and in September, 1936, petitioner was notified that the trustee in bankruptcy would offer the machinery of the furniture company for sale. At that time the records were checked and petitioner was informed that the machinery was not pledged as security for the payment of his bonds. Petitioner says when he learned of this fact he was told by the receiver of

the bank that if he pressed his claim judgment would be taken against him on his collateral note and for that reason he refrained from doing anything until he was told by his attorney November 20, 1939 what his legal rights were. Just what they were is not alleged. We think the allegations of the petition show that Johnson was guilty of laches and that his claim was barred by the statute of limitations.

But in any view of the case, if we assume that petitioner states a good cause of action he could recover if he had instituted proceedings within five years from the date he purchased the bonds, in February, 1927. But not having done so, his claim is barred, Ill. Rev. Stat. 1939, ch. 83, par. 16 [Jones Ill. Stats. Ann. 107.275], unless the cause of action was fraudulently concealed within the meaning of Ill. Rev. Stat. 1939, ch. 83, par. 23 [Jones Ill. Stats. Ann. 107.282]. Under the rule announced in the Sherman Bank case, above discussed, petitioner's cause of action was not concealed within the meaning of par. 23 of the statute, one of the reasons being that he was required to take notice of the fact that the trust deed had been recorded.

But counsel for petitioner say petitioner was under no duty to examine the public records to ascertain the nature and extent of the security of the bonds, "where he relied in this respect on the statements made to him by the seller at the time of sale, inasmuch as a trust and fiduciary relationship exists between such parties," and Sampson v. Glanz, 302 Ill. App. 624, is cited. That case is not in point. There plaintiff purchased a bond in November, 1928 from defendant who represented to plaintiff that the bond was secured by a mortgage on two pieces of real estate when, as a matter of fact, one of the pieces had been released of record. But in that case suit was filed within five years from the date of the purchase so that the action was not barred. The court there said: "The cause of action came into being when the plaintiff purchased

the bond, that is, on February 3, 1930, and the suit was filed on January 15, 1935, well within the five-year period. Ill. Rev. Stat. 1939, ch. 83, par. 16.''

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

MATCHETT and McSURELY, JJ., concur.