William E. Bush, Plaintiff-Appellant, v. Continental Casualty Company, Defendant-Appellee.

Gen. No. 52,876.

First District, First Division.

October 27, 1969.

John D. Pope and John J. Naughton, of Chicago (William J. Harte and Robert W. Rooney, of counsel), for appellant.

Thomas E. Keane, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This case comes to us on plaintiff's appeal from a judgment entered on the pleadings sustaining the defendant's motion to dismiss the cause of action. The trial court held that the complaint failed to state a cause of action and that the suit was barred by the Statute of Limitations. Ill Rev Stats 1959, c 83, §16.

The complaint was filed on May 19, 1961. Plaintiff alleged that on or about the 15th day of June, 1948, he was engaged in the planning and promotion of medical care and compensation for occupation diseases and injuries due to accidents sustained by Mexican nationals legally working in the United States. On that date, plaintiff informed the defendant insurance company that he had a plan of insurance and/or bonding of Mexican workers which would bring great earnings and profits to the insurance company. The defendant was not then in the business of writing medical care and accident insurance covering Mexican nationals. The defendant, acting through its duly authorized agents, requested and in-

duced the plaintiff to fully divulge and inform it of his plan. As an inducement, the defendant promised to pay plaintiff "so much money as he reasonably deserved to have" in the event the defendant obtained the business. Plaintiff, relying on the inducements, promises, and representations of the defendant, did divulge and disclose his plan. At the special request of the defendant, he arranged meetings between the defendant and the then officials of the Mexican Consulate in Chicago and assisted in obtaining the help of agencies of the government of the United States in the drafting of a treaty covering the matters with Mexico, whereby an insurance and/or bonding service was to be established to be used by all employers of Mexican nationals in the United States.

It was further alleged that as a result of plaintiff's planning and his labors, the defendant obtained a substantial business resulting in great earnings and profits. On June 6, 1948, the defendant fraudulently and wilfully misrepresented and declared to plaintiff that it was unable to write such policies and would take no further action in the matter. Plaintiff, relying on this fraudulent misrepresentation, did nothing further. On October 8, 1959, it came to plaintiff's knowledge, that the defendant had misrepresented the truth to him and had been writing insurance covering Mexican nationals in accordance with the plan he submitted to the defendant, and is still in the business. Plaintiff made prompt demand for the value of his services, but the defendant has refused and still refuses to pay him the reasonable value of his services rendered in its behalf. Plaintiff, accordingly, sought judgment against the defendant in the sum of $250,000.

The defendant filed a motion seeking judgment on the ground that the complaint failed to allege sufficient facts to constitute a contract or contractual relationship between the parties. The motion also alleged that in any

case the suit was barred by Ill Rev Stats 1959, c 83, § 16, which recites that:

> Actions on unwritten contracts . . . shall be commenced within five years next after the cause of action accrued.

It was further alleged that the suit was barred by Ill Rev Stats 1959, c 59, § 1, which states in part:

> No action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement . . . shall be in writing. . . .

The defendant also averred that plaintiff did not allege that he was a licensed agent, representative, or broker who could legally be paid any money, commission, or brokerage service fee for the negotiation or solicitation of contracts of insurance as required by Ill Rev Stats 1959, c 73, § 1065.40.

The trial court allowed the Statute of Limitations to be raised by motion because the facts under which it was argued appeared on the face of the complaint and were properly before the court. The court stated that the plaintiff had failed to allege the facts required to bring this case within the fraudulent concealment provision of the Statute of Limitations. Ill Rev Stats 1959, c 83, § 23. The court concluded that the complaint did not squarely allege that there had been a misrepresentation and that facts and circumstances were not alleged which would show that the defendant intended to deceive the plaintiff and intended to conceal what it was doing to prevent a cause of action. There was also no allegation that the plaintiff could not have learned that the insurance company was writing the policies if he had exercised due diligence. The court, therefore, entered an order on October 17, 1967, dismissing the suit because the complaint

failed to allege a cause of action and the action was further barred by the Statute of Limitations.

Plaintiff moved to vacate the dismissal. During the hearing on this motion, the court permitted argument by plaintiff's counsel on the allegations in the amended complaint he wished to file. In the original complaint, plaintiff alleged that on or about June 15, 1948, he informed the defendant of his plan of insuring Mexican workers. Counsel for the plaintiff said the complaint should have read "1949" instead of "1948." In the amended complaint, plaintiff alleges he made inquiry of the defendant during March, 1951. The amendment expands the original general allegation that the defendant, through its agents, requested and induced plaintiff to divulge his plan. It alleged that defendant, through a Mr. Rinker, who was in charge of its group insurance department, informed plaintiff that the company was interested and that he should divulge his plan in writing. Plaintiff was requested, as the agent of the company, to accompany two of its insurance salesmen to the office of the Mexican Consul for the purpose of discussing the group policy. Rinker orally agreed to pay plaintiff so much money as he reasonably deserved. Plaintiff was requested to submit the written plan to the Mexican and United States officials, which he did, to tie the plan in with the Bracero Treaty then being discussed by the two governments. The plan was incorporated by reference in the work agreement provided for by the Bracero Treaty which was ratified by the two governments on August 8, 1951.

It was further alleged, in the amended complaint, that during the years 1951 and 1952, plaintiff was intermittently absent from Chicago. In July, 1951, he contacted one of the two insurance salesmen for the defendant whom he had introduced to the Mexican Consul and was informed by the insurance salesman that the defendant

had been unsuccessful in writing the insurance and that they had dropped the matter. Plaintiff then attempted to contact Rinker to no avail and alleged that Rinker avoided him until some time in the year 1959 or 1960. It was at that time that plaintiff read in the Chicago press that the Bracero Treaty, effective August 8, 1951, had been renewed. He then checked with the new Mexican Consul and was informed that the defendant had written the insurance. He went to the defendant's offices and was informed that Mr. Rinker was out. He saw a Mr. Ewald who admitted that the defendant had written the business, but denied any knowledge of the plaintiff's activities. The original complaint was then filed on May 19, 1961. On November 20, 1967, the court entered an order denying plaintiff's motion to vacate the dismissal and for leave to file the amended complaint.

The action commenced by plaintiff, as alleged in the amended complaint, is based on an alleged oral agreement made in March, 1951, to pay plaintiff so much money as he reasonably deserved to have in the event that the defendant obtained his plan for group insurance. In the original complaint, the year of the agreement was 1948. This suit was commenced on May 19, 1961. Whether the Statute of Limitations is applicable depends in the first instance on the allegations in the complaint. From the allegations of either complaint it appears that the plaintiff filed his action some ten years after the defendant wrote the group insurance. This would put his suit outside the five years allowed for suits based on unwritten contracts. Ill Rev Stats 1959, c 83, § 16.

To toll the statute, plaintiff alleges that the defendant fraudulently concealed his cause of action from him and that he brought his suit within two years after he learned in 1959 that the defendant had written insurance pursuant to his plan in 1951. If these contentions were valid, plaintiff's suit would be saved by Ill Rev Stats 1959, c 83, § 23, which provides:

If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action and not afterwards.

■■ A party seeking to avail himself of section 23, however, must allege facts that affirmatively show fraudulent concealment of the cause of action by the defendant which prevented the plaintiff from discovering that he had a cause of action. This rule that the Statute of Limitations begins to run only from the discovery of the cause of action, does not apply when the party affected by the fraud might with ordinary diligence have discovered it. Skrodzki v. Sherman State Bank, 348 Ill 403, 181 NE 325; People ex rel. Nelson v. Union Bank of Chicago, 308 Ill App 411, 32 NE2d 194. In Skrodzki the Supreme Court said:

It was there held (in Keithley v. Mutual Life Ins. Co., 271 Ill 584) that mere silence by the person liable is not concealment of a cause of action, but such concealment must consist of affirmative acts or representations. It was there also held that fraudulent misrepresentations which form the basis of the cause of action do not constitute a fraudulent concealment in the absence of proof of acts or representations tending fraudulently to conceal the cause of action, and that the rule that the statute begins to run only from the discovery of the fraud does not apply when the party affected by the fraud might with ordinary diligence have discovered it. 348 Ill 403, 407, 181 NE 325, 327.

In Nogle v. Nogle, 53 Ill App2d 457 at 464, 202 NE2d 683 at 687, the court quoted with approval this statement on fraudulent concealment:

Such concealment must consist of affirmative acts or representations; there must be some trick or contrivance or affirmative action intended to exclude suspicion and prevent inquiry. 25 ILP "Limitations," Section 92 at 267, 268.

It appears from the plaintiff's argument that he contends that the circumstances between the parties were such as would not induce inquiry by plaintiff and that the means of ascertaining the truth were not readily available to him on such inquiry. The trial judge found to the contrary, and we are in accord. We do not believe that the facts alleged in the complaint or the amendment justify the requested relief.

Although defendant's principal office was in Chicago, plaintiff alleged that he only talked to one of the two salesmen he had introduced to the Mexican Consul. This man told plaintiff that the company had been unsuccessful in obtaining the business and that they had dropped the idea of writing such insurance. It was further alleged that the plaintiff attempted to contact Mr. Rinker, but that he could not reach him because Rinker avoided him for some eight years. Other than these actions, plaintiff admits doing nothing. Even if plaintiff were the defendant's agent and they owed him a fiduciary duty, which we do not believe was the case, plaintiff's conduct does not meet the lesser standard of the duty of a diligent inquiry.

Plaintiff alleges that he discovered the fraud when he read in the Chicago press in 1959 or 1960, that the Bracero Treaty, effective August 8, 1951, had been renewed and then checked with the Mexican Consul who told him defendant had been writing the insurance. Plaintiff had dealt with the Mexican Consul for the insurance company in 1951. He had obtained the assistance of agencies of the government of the United States in the drafting of the Treaty. Either avenue of inquiry was also open to

him in 1951, after the alleged misrepresentation by the salesman. The Bracero Treaty was a matter of public record. Article 19 of the Treaty provides:

> The Employer shall provide for the Mexican Worker, at no cost to such Worker, the guarantees with respect to medical care and compensation for Personal Injury and Disease provided in Article 3 of the Work Contract.

The Treaty would thus have informed plaintiff that someone had to be writing the insurance.

■ By his own admission, plaintiff was engaged in the planning and promotion of medical care and compensation for occupational diseases and injuries sustained by Mexican nationals in 1948 and was and is engaged in the writing of multiple lines of casualty, accident, life, and health insurance which would establish him as a business man. He was acquainted with the Mexican Consul and with various representatives of the United States government who were working on the Bracero Treaty with Mexico. These sources plus the Treaty and ordinary inquiry of the insurance company were open to him from 1951 on. We hold, as did the trial court, that plaintiff alleged no facts of concealment by the defendant that would have prevented the plaintiff from discovering that the defendant was writing the insurance after the Treaty became effective in 1951.

■■ One of the purposes of a statute of limitations is to require any necessary litigation to be brought within such time as the particular facts and circumstances may be proved with the utmost certainty and before sufficient proof has become stale or entirely lost. Horn v. City of Chicago, 403 Ill 549, 560, 87 NE2d 642, 649. A statute of limitations is designed not merely to raise a presumption of payment of a just debt, through the lapse of time, but to protect against stale demands after the

true state of the transaction may have been forgotten or be incapable of explanation by reason of the death or removal of witnesses. For this bar against his action, the plaintiff cannot complain, since it was by his own neglect that the bar became effective.

Because we affirm the judgment for the defendant on the ground that the complaint and the amendment sought to be filed thereto are barred by the Statute of Limitations, we do not reach the questions of whether the plaintiff asserted sufficient essential facts to state a cause of action and whether plaintiff's failure to move in due time, in the trial court, for leave to file an amended complaint would preclude consideration of the proposed amended complaint in this court. We conclude that the judgment on the pleadings was properly entered for the defendant and it is therefore affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.