JANE GUEBARD, Plaintiff-Appellant, *v.* GERALD A. JABAAY, M.D., *et al.*, Defendants-Appellees.

Second District   No. 77-6

Opinion filed October 18, 1978.

James A. Geraghty, of Wheaton, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, Jane Guebard, appeals from a judgment of the Circuit Court of Du Page County dismissing her complaint of medical malpractice insofar as it related to defendants Richard Angell, M.D., and Loyola University Hospital on the grounds the cause was barred by the statute of limitations (Ill. Rev. Stat. 1969, ch. 83, par. 15).

Plaintiff originally filed her complaint on August 16, 1972, against only defendants Gerald A. Jabaay, M.D., and the Glen Ellyn Clinic. She alleged then that in January 1971 she had injured her knee in a skiing accident and thereafter came under the care of Dr. Jabaay, an orthopedic surgeon employed by the Glen Ellyn Clinic. When conservative treatment failed to alleviate her condition Dr. Jabaay recommended surgery to plaintiff which was performed (she then believed by him) at Loyola University Hospital in Maywood, Illinois, on June 22, 1971. As this operation failed to relieve her condition, Dr. Jabaay then performed a second surgery on plaintiff's knee at the Central Du Page Hospital in Winfield, Illinois, on October 6, 1971. This procedure was also unsuccessful and she alleged her knee was left in worse condition than it had been before the operations. Plaintiff further alleged these parties had negligently treated her and sought damages for her resulting condition.

On July 25, 1973, plaintiff filed answers to interrogatories propounded by Dr. Jabaay and the Glen Ellyn Clinic. Interrogatory No. 26 requested plaintiff to identify each person known by her to have knowledge of any fact or record relating to her action and in response to it she referred to a list which included:

"8. Dr. Richard Angell
Loyola University Medical Center
Maywood, Illinois
June 22, 1971—possible operating physician."

On February 23, 1976, plaintiff filed an amended complaint adding Loyola University Hospital and Dr. Angell as defendants and alleging battery in that Dr. Angell, a resident surgeon employed by the hospital,

actually performed the June 22, 1971, surgery on plaintiff without her knowledge or consent while she was unconscious. On March 3, 1976, plaintiff filed a second amended complaint which added counts for medical malpractice against these added defendants and also alleged that plaintiff first discovered that Dr. Angell had actually performed the June 21 surgery during a deposition of Dr. Jabaay taken on December 15, 1975. A third amended complaint, filed on March 12, 1976, added a general allegation that all of the defendants had conspired together in not disclosing to plaintiff that the June 21 surgery had, in fact, been performed by Dr. Angell rather than Dr. Jabaay.

On April 21, 1976, the trial court granted the motion of Dr. Angell and Loyola University Hospital to dismiss the third amended complaint as to them on the grounds that, although the alleged negligence occurred in 1971, the lawsuit naming them was not filed until 1976 and, therefore, it was barred by the two-year statute of limitations (Ill. Rev. Stat. 1969, ch. 83, par. 15).

Plaintiff was then allowed to file a fourth amended complaint in order to more specifically allege fraudulent concealment by Dr. Angell and Loyola University Hospital of the fact that Dr. Angell performed the first surgery in an effort to invoke the fraudulent concealment provisions of the Limitations Act (Ill. Rev. Stat. 1969, ch. 83, par. 23) to toll the running of the statute. In it she alleged that the defendants had falsely indicated in hospital, clinic, insurance and other reports that the first surgery was performed by Dr. Jabaay and had also made statements to plaintiff indicating that he performed it.

The trial court again dismissed plaintiff's complaint as to Dr. Angell and the hospital on the basis that her cause of action was barred by the statute of limitations and this appeal followed.

Plaintiff contends first that under the "discovery rule" the two-year statute of limitations applicable to personal injury claims (Ill. Rev. Stat. 1969, ch. 38, par. 15) did not begin to run as against Dr. Angell and Loyola University Hospital (hereinafter "defendants") until she learned during her deposition of Dr. Jabaay on December 15, 1975, that Dr. Angell actually performed the June 21, 1971, surgery. She argues that her suit was thereafter timely filed on February 23, 1976, that being within two years of December 15, 1975, the date plaintiff alleges she first discovered the identity of these possible new defendants.

■■■ A statute of limitations is a designated period of time during which a cause of action must be brought or be forever barred. (*Roper v. Markle* (1978), 59 Ill. App. 3d 706, 707, 375 N.E.2d 934, 935.) Its primary purpose is to require the prosecution of a cause of action within a reasonable time so as to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims. (*Tom Olesker's Exciting*

*World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132, 334 N.E.2d 160, 162.) Before courts and legislatures began applying the discovery rule to limitations periods the statute ran from the time that the last act giving rise to a cause of action occurred (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 435, 176 N.E.2d 761, 763; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 707-08, 375 N.E.2d 934, 936), which in a tort action was when all of the necessary elements were present, including a legal duty, breach of that duty and injury resulting from such breach (*Roper v. Markle* (1978), 59 Ill. App. 3d 706, 708, 375 N.E.2d 934, 936; *Coumoulas v. Service Gas, Inc.* (1973), 10 Ill. App. 3d 273, 274, 293 N.E.2d 187, 188). This rule takes no cognizance of the situation in which an injured party is unable to discover, regardless of his diligence, that he has been injured until after the limitations period has passed and his suit is forever barred. Its harshness, however, has been mitigated in certain types of cases by application of the "discovery rule." That rule provides that the limitations period commences not when the last act giving rise to a cause of action has occurred but when the plaintiff knew or should have known that he was "injured." *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 708, 375 N.E.2d 934, 936; *Lincoln-Way Community High School District 210 v. Village of Frankfort* (1977), 51 Ill. App. 3d 602, 608, 367 N.E.2d 318, 323-24.

■■ The discovery rule, as applied to the accrual of a cause of action in medical malpractice, was stated in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450. There the plaintiff alleged that she had been negligently advised by defendants that an excised tumor was not malignant when, in fact, it was and the faulty diagnosis resulted in amputation of a limb three years later, at which time plaintiff first discovered defendants' negligence. The trial court held that the action commenced by plaintiff more than two years after the alleged negligent diagnosis by defendants was barred by the two-year statute of limitations for personal injury. The supreme court, however, following the discovery rule of *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, held that the cause of action did not accrue until the plaintiff first discovered the defendants' diagnostic error stating that "in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it." 46 Ill. 2d 32, 40, 262 N.E.2d 450, 455.

■■ Plaintiff's contention in the present case would extend the discovery rule as applied to medical malpractice cases to mean that the cause of action accrues when the person injured learns, or reasonably should have learned, of the *identity* of the person responsible for his injury, even though he earlier knew of the injury itself. We are not aware of any case in

which the discovery rule has been so extended or applied and we are not convinced that the logic of the rule warrants such an extension by us. (See *Solt v. McDowell* (1971), 132 Ill. App. 2d 864, 868, 272 N.E.2d 53, 56-57.) In applying the discovery rule the court will balance the hardship on the plaintiff caused by the bar of his suit against the increased burden of a defendant to obtain proof of his defense after the passage of time. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 133, 334 N.E.2d 160, 162; *Lincoln-Way Community High School District 210 v. Village of Frankfort* (1977), 51 Ill. App. 3d 602, 608, 367 N.E.2d 318, 324.) The hardship imposed upon a party who is unaware he has an actionable injury until after the limitations period has run is much more severe than that imposed upon a party who knows, or reasonably should know, he has suffered an actionable injury but does not learn the identity of the person who injured him until after the limitations period has passed. The former is in no position to take advantage of the limitations period in which to determine the identity of the party injuring him. The latter, however, knows he has a cause of action, has the time given by the limitations period to attempt to learn the identity of the person who injured him and is not in the position of being barred before ever knowing of his right to sue. We find no basis upon which the extension of the discovery rule urged by plaintiff could be applied in this case.

■■ In any event, should we assume that plaintiff's failure to discover the identity of defendants would toll the statute as to them until identified, plaintiff's suit was still not timely filed. Her interrogatory response in July 1973 in which she listed defendant Angell as a "possible operating surgeon" makes it clear she then had reason to believe he may have performed the first operation. However, it was not until February 1976, some 2½ years later, that plaintiff sought to join these defendants in this action. In this event it is apparent that her suit was not filed within two years after she should reasonably have discovered that she had a cause of action against Dr. Angell and his hospital employer and is, therefore, barred.

Plaintiff further contends that her cause of action is preserved by virtue of the fraudulent concealment provision of the Limitations Act, section 22, which provides:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards." (Ill. Rev. Stat. 1969, ch. 83, par. 23.)

Defendants, however, contend the trial court properly rejected plaintiff's claim of fraudulent concealment in that section 22 of the Limitations Act concerns fraudulent concealment of a *cause of action* and does not reach a claim of fraudulent concealment of the *identity* of a tortfeasor as alleged here. We must agree.

■■ There is not such a dearth of authority on this question as the parties suggest in their arguments. Our research has disclosed the issue has been considered in Illinois and other jurisdictions.

> "Under the Limitations Act, the only concealment which postpones the running of the statute of limitations is fraudulent concealment by the defendant of the cause of action from the knowledge of the person entitled thereto. Concealment of the identity of a party liable is not deemed the same as concealment of the cause of action as far as concerns the running of the statute of limitations * * *." (25 Ill. L. & Prac. *Limitations* §92 (1956); *Short v. Estate of Jacobus* (1918), 212 Ill. App. 77; *Proctor v. Wells Brothers Co.* (1913), 181 Ill. App. 468, 471, *aff'd*, 262 Ill. 77, 104 N.E. 186; *Athey v. Hunter* (1896), 65 Ill. App. 453.)

The decided cases of other jurisdictions having similar fraudulent concealment provisions in their limitations acts support this view seemingly without exception (*International Brotherhood of Carpenters v. United Association of Journeymen* (Fla. Dist. Ct. App. 1976), 341 So. 2d 1005; *UAW v. Wood* (1953), 337 Mich. 8, 59 N.W.2d 60; *Landers v. Evers* (1940), 107 Ind. App. 347, 24 N.E.2d 796; *Staples v. Zoph* (1935), 9 Cal. App. 2d 369, 49 P.2d 1131; *Griffith v. Shannon* (Tex. Civ. App. 1926), 284 S.W. 598; see 54 C.J.S. *Limitations of Actions* §206e (1948); Annot., 173 A.L.R. 584-86 (1948)), and plaintiff's allegations here that these defendants concealed their identity from her will not invoke the fraudulent concealment provisions of the Limitations Act.

While it can hardly be denied that the limitation of action rules we have discussed are sometimes harsh in application to a given case, that is the nature of any statute providing for such limitations; the legislature has sought to limit the trial of stale claims and has not provided for extension of the time within which an action may be brought on the grounds urged by plaintiff.

In view of our holding that section 22 of the Limitations Act does not extend to fraudulent concealment of the identity of a tortfeasor we need not consider defendants' further contention that the allegations of the complaint were insufficient to raise the issue of fraudulent concealment. See *Wilson v. LeFevour* (1974), 22 Ill. App. 3d 608, 609-10, 317 N.E.2d 772, 773; *Bush v. Continental Casualty Co.* (1969), 116 Ill. App. 2d 94, 253 N.E.2d 619.

For the above reasons the order of the trial court dismissing plaintiff's complaint as against defendants is affirmed.

Affirmed.

GUILD and RECHENMACHER, JJ., concur.