Vaughan L. McDOUGAL, Plaintiff
and Appellant,

v.

Thomas S. WEED, M.D., Defendant
and Appellee.

No. 960747–CA.

Court of Appeals of Utah.

Sept. 18, 1997.

Mark R. McDougal, Salt Lake City, for Plaintiff and Appellant.

Philip R. Fishler and Catherine M. Larson, Salt Lake City, for Defendant and Appellee.

Before BENCH, JACKSON and ORME, JJ.

JACKSON, Judge:

Plaintiff, Vaughan L. McDougal, appeals the district court's order granting summary judgment in favor of Thomas S. Weed. We affirm.

## BACKGROUND

On December 11, 1991, McDougal was injured in a skiing accident. He went to the Cottonwood Hospital Emergency Room (emergency room) where an emergency room doctor treated him for a dislocated shoulder.

On February 5, 1992, Dr. Thomas Hawkes operated on McDougal's affected shoulder. At or before this time, Hawkes told McDougal that the treatment he received at the emergency room may have been inappropriate and had possibly resulted in additional injuries.

On February 1, 1994, as required by Utah Code Ann. §§ 78–14–8 and 78–14–12 (Supp. 1997), McDougal filed a notice of intent to commence a medical malpractice action with the Utah Professional Licensing Division (Division), requesting prelitigation panel review. In this notice, McDougal named Cottonwood Hospital Medical Center (Cottonwood), Dr. Steve R. Souter, and John Does I–X as defendants. The prelitigation hearing was held on June 23, 1994. At that time, the panel informed McDougal that the doctor who had treated him at the emergency room was Dr. Thomas Weed, not Souter. On June 27, 1994, the Division issued its opinion and an affidavit of compliance with the procedural requirements of section 78–14–12.

On July 14, 1994, McDougal dismissed Souter as a defendant. On September 30, McDougal filed a notice of intent to commence a malpractice action against Weed. On October 25, McDougal filed a complaint in district court naming Cottonwood and John Does I–X as defendants, but not naming Weed.

On November 2, at the request of the Division, McDougal filed a request for a second prelitigation hearing naming Weed as defendant. Philip Fishler, who had been Souter's counsel, was then also retained by Weed. A prelitigation hearing on McDougal's claim against Weed was held on March 14,

1995, and on that same date the Division issued its opinion and affidavit of compliance regarding McDougal's proposed action against Weed. On July 14, 1995, McDougal filed a complaint in district court naming Weed as defendant.

In January of 1996, Weed filed a motion for summary judgment alleging that McDougal's claims were barred by the applicable statute of limitations. On August 14, 1996, following oral argument on the motion for summary judgment, the trial judge granted Weed's motion, dismissing McDougal's action against Weed.

McDougal appeals the district court's order, asserting that the two-year medical malpractice statute of limitations is tolled until the time the plaintiff discovers, or through the use of reasonable diligence should have discovered, both the existence of the recoverable injury *and* the defendant's identity. Alternatively, McDougal contends that even if the statute of limitations was triggered only on the date he learned that he had received the injury, the district court erred in granting the summary judgment motion because the fraudulent concealment exception to the medical malpractice statute of limitations applies in this case.

## ANALYSIS

We initially note that summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). In cases such as this one, where facts are undisputed and summary judgment is granted as a matter of law, "[w]e review the trial court's conclusions of law for correctness, granting them no deference." *American Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 188 (Utah 1996).

### I. Medical Malpractice Discovery Rule

The statute of limitations for medical malpractice actions is set forth in Utah Code Ann. § 78–14–4 (1996):

(1) No malpractice action against a health care provider may be brought unless it is commenced within two years after the

plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the *injury,* whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence, except that:

. . . .

> (b) In an action where it is alleged that a patient has been prevented from discovering misconduct on the part of a health care provider because that health care provider has affirmatively acted to fraudulently conceal the alleged misconduct, the claim shall be barred unless commenced within one year after the plaintiff or patient discovers, or through the use of reasonable diligence, should have discovered the fraudulent concealment, whichever first occurs.

*Id.* (emphasis added).

As is apparent from the statute, the limitations period is tied to the patient's discovery of his or her injury. In *Foil v. Ballinger,* 601 P.2d 144 (Utah 1979), the Utah Supreme Court interpreted the "discovery of injury" language to mean discovery of "legal injury." *Id.* at 148. Thus, "the two-year provision does not commence to run until the injured person knew or should have known that he had sustained an injury *and* that the injury was caused by negligent action." *Id.* (emphasis added); *accord Seale v. Gowans,* 923 P.2d 1361, 1363 (Utah 1996); *Chapman v. Primary Children's Hosp.,* 784 P.2d 1181, 1184 (Utah 1989) ("Discovery of legal injury . . . encompasses both awareness of physical

injury and knowledge that the injury is or may be attributable to negligence.").

McDougal concedes that he learned of the injury that was allegedly caused by the emergency room doctor's treatment no later than February 5, 1992. However, he asserts that he did not discover, nor could have discovered through reasonable diligence, the identity of the proper party defendant until June 23, 1994, when he was told by the prelitigation panel that Weed was his treating physician. McDougal therefore contends that the statute of limitations should have been tolled until the June 1994 date. We disagree.

The statutory language clearly sets the moment the "patient discovers . . . the injury" as the triggering moment for the limitations period. Utah Code Ann. § 78–14–4(1) (1996). Thus, the *only* triggering moment contemplated under the statute is the moment of discovery of the legal injury. The discovery of an injury and that the injury was possibly the result of medical malpractice are facts distinct from discovery of the identity of a defendant. Accordingly, an injured person need not determine the identity of the person responsible for his or her injury to determine that he or she has been injured and that the injury was possibly tied to negligence.[1] Thus, we conclude that the statutory discovery rule does not require that the statute of limitations be tolled until the identity of the tortfeasor is discovered or should have been discovered after a reasonably diligent effort to ascertain it.[2]

1. We have previously held in *Aragon v. Clover Club Foods Co.,* 857 P.2d 250 (Utah Ct.App. 1993), that the products liability statute of limitations is tolled until the plaintiff discovers both the injury and the identity of the manufacturer. *Id.* at 253. However, this case is distinguishable. The products liability statute of limitations involved in *Aragon* was not triggered until " 'both the harm *and* its cause' " were discovered. *Id.* at 252 (emphasis added); *see also* Utah Code Ann. § 78–15–3 (1996). We interpreted "cause" to allow for tolling of the statute of limitations until the plaintiff had discovered *the identity of the* manufacturer. 857 P.2d at 253. However, because the medical malpractice statute of limitations is triggered only by the discovery of the injury, our interpretation of the meaning of the word "cause" in *Aragon* does not apply to this case.

2. During oral argument, McDougal argued that *Jensen v. IHC Hosps., Inc.,* 944 P.2d 327 (Utah), *reh'g granted on other grounds,* 324 Utah Adv. Rep. 20 (Utah 1997), supported his argument that the limitations period should run from the time the plaintiff discovers a tortfeasor's identity. McDougal specifically referred to the language in the opinion, stating "that the limitations period starts running when the patient or plaintiff discovers, or through the exercise of due diligence should have discovered, the underlying injury and *its origins* in medical malpractice," *id.* at 337 (emphasis added), as support for his proposition. However, this language does not seem to help McDougal; after all, it is far from obvious that "its origins" refers to discovery of the defendant's identity. In context, the statement does not depart from prior case law, which has held that the limitations period is triggered when the plaintiff discovers "the underlying injury" and

Our decision today comports with prior Utah Supreme Court interpretation of the statutory scheme, which has focused solely on the time of the discovery of the injury and the injury's ties to negligence. *See Seale*, 923 P.2d at 1363; *Chapman*, 784 P.2d at 1184; *Foil*, 601 P.2d at 148. Our decision is also consistent with the case law from other jurisdictions holding that discovery of a possible malpractice cause of action, and not discovery of a defendant's identity, triggers the limitations period. *See Guebard v. Jabaay*, 65 Ill.App.3d 255, 21 Ill.Dec. 620, 623, 381 N.E.2d 1164, 1167 (1978) (stating "[w]e are not aware of any case in which the discovery rule has been so extended or applied and we are not convinced that the logic of the rule warrants such an extension by us"); *Hall v. Fortino*, 158 Mich.App. 663, 405 N.W.2d 106, 109 (1986) (stating medical malpractice discovery rule is tied to discovery of malpractice rather than tortfeasor's identity); *Flowers v. Walker*, 63 Ohio St.3d 546, 589 N.E.2d 1284, 1288 (1992) (holding "the 'cognizable event' that alerted [the plaintiff] of the need to investigate a malpractice claim" was the discovery of her disease, not the defendant's identity); *Grossi v. Miriam Hosp.*, 689 A.2d 403, 404 (R.I.1997) (holding statute tolling medical malpractice actions until patient discovers injury does not apply to toll limitations period when patient knows of injury but not defendant's identity).

■ Accordingly, we hold that the medical malpractice statute of limitations is tied only to the discovery of the plaintiff's legal injury and not to the discovery of the tortfeasor's identity. Because McDougal concedes that he was aware of his legal injury by February 5, 1992, he had two years from that date to file his action against Weed, i.e., February 4, 1994. His filing of the notice of intent to commence a malpractice action against Weed on September 30, 1994 was therefore untimely.

## II. Fraudulent Concealment

■ McDougal argues, however, that Weed fraudulently concealed his identity. Thus, he contends that his action was timely

under Utah Code Ann. § 78–14–4(1)(b) (1996).

■ We initially note that the Utah medical malpractice statute of limitations provides an exception for fraudulent concealment of the physician's misconduct. *See* Utah Code Ann. § 78–14–4(1)(b) (1996) ("[W]here it is alleged that a patient has been prevented from discovering misconduct on the part of a health care provider because that health care provider has affirmatively acted to fraudulently conceal the alleged misconduct, the claim shall be barred unless commenced within one year after the plaintiff ... discovers [the concealment].")). No Utah court has addressed whether the Utah medical malpractice exception for fraudulent concealment of "misconduct" covers fraudulent concealment of identity or whether fraudulent concealment of identity should toll the general two-year statute of limitations. Although no Utah court has addressed the issue, other jurisdictions have split on it. *Compare Estate of Chappelle v. Sanders*, 442 A.2d 157, 158–59 (D.C.1981) (holding that concealment of identity did not toll statute of limitations), *Guebard v. Jabaay*, 65 Ill.App.3d 255, 21 Ill.Dec. 620, 623, 381 N.E.2d 1164, 1167 (1978) (holding fraudulent concealment provision of medical malpractice statute of limitations did not cover fraudulent concealment of identity), *and Burns v. Thomas*, 790 S.W.2d 1, 2 (Tex.App.1988) (holding that concealment of identity did not toll statute of limitations), *rev'd on other grounds*, 786 S.W.2d 266 (Tex.1990), *with McCormick v. Uppuluri*, 250 Ill.App.3d 386, 190 Ill.Dec. 188, 192, 621 N.E.2d 57, 61 (1993) (suggesting that if defendant had concealed identity a cause of action in fraudulent concealment may have arisen), *Dougherty v. Gifford*, 826 S.W.2d 668, 673–75 (Tex.App.1992) (holding that since defendant had duty to disclose identity failure to identify was fraudulent concealment), *and Sattler v. Bailey*, 184 W.Va. 212, 400 S.E.2d 220, 228–29 (1990) (holding that concealing identity gave rise to fraudulent concealment cause of action). However, because McDougal failed to make a sufficient claim of fraudulent concealment, we need not decide whether to allow a fraud-

that it is a result of negligence, i.e., "its origins in     medical malpractice."

ulent concealment exception to the two-year statute of limitations when the tortfeasor has concealed only his or her identity.

Fraudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or otherwise act to conceal material facts known to him. Such a duty or obligation may arise from a relationship of trust between the parties, an inequality of knowledge or power between the parties, or other attendant circumstances indicating reliance. The party's silence must amount to fraud, i.e., silence under the circumstances must amount to an affirmation that a state of things exists which does not exist, and the uninformed party must be deprived to the same extent as if a positive assertion has been made. Such "[c]oncealment or non-disclosure becomes fraudulent only when there is an existing fact or condition . . . which the party charged is under a duty to disclose." Making use of a device that misleads, some trick or contrivance that is intended to exclude suspicion and prevent inquiry, may also amount to fraudulent concealment.

*Jensen v. IHC Hosps., Inc.,* 944 P.2d 327, 333 (citations omitted), *reh'g granted on other grounds,* 324 Utah Adv. Rep. 20 (Utah 1997). The supreme court has explained that summary judgment is almost never appropriate in a fraudulent concealment case, except

(i) when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of the governing legal standards to the facts or (ii) when the facts underlying the allegation of fraudulent concealment are so tenuous, vague, or insufficiently established that they fail to raise a genuine issue of material fact as to concealment, with the result that the claim fails as a matter of law.

**3.** In his reply brief, McDougal suggests for the first time that Cottonwood may have fraudulently concealed Weed's identity as well. "Because presentation of this argument in a reply brief does not conform to 'Rule 24(c) of the Appellate Rules of Procedure limit[ing] answers in a reply brief to new matter in the appellee's brief,' we

*Berenda v. Langford,* 914 P.2d 45, 54 (Utah 1996); *accord Jensen,* 944 P.2d at 334.

In this case, McDougal contends that Fishler, Weed's attorney, fraudulently concealed Weed's identity.[3] McDougal argues that Fishler, who represented Souter during the original action brought against Souter, was obligated to inform McDougal that he had sued the wrong doctor. However, McDougal failed to assert any factual or legal basis for his contention that Fishler should have told McDougal that Dr. Weed, not Dr. Souter, was the doctor in question.

■ Further, at the time that Fishler became aware that McDougal had sued the wrong doctor, he was representing Souter, not Weed. There is no evidence in the record that Fishler was Weed's attorney at the time that Fishler became aware of McDougal's mistake. There is also no evidence that Fishler was silent because he was acting for Weed at the time of the discovery of McDougal's mistake. Thus, even assuming that Fishler's silence could otherwise constitute evidence sufficient to prevent summary judgment, there is no evidence in the record that could connect Fishler's silence with Weed. Because it is clear that the actions of an attorney not formally representing a client may not be imputed to the client, *State v. Crider,* 78 N.M. 312, 431 P.2d 45, 47 (1967), and because "[g]enerally, fraudulent concealment of a cause of action by a person other than defendant will not toll the statute of limitation," 54 C.J.S. *Limitations of Actions* § 91; *see also Dougherty,* 826 S.W.2d at 676; *Harrison v. Davis,* 197 W.Va. 651, 478 S.E.2d 104, 112 (1996), we must conclude that there is no evidence connecting Weed with any concealment. Thus, we need not decide whether the medical malpractice statute of limitations contemplates tolling for the fraudulent concealment of a defendant's identity or whether the statutory exception for fraud-

decline to consider this argument." *Country Meadows Convalescent Ctr. v. Utah Dep't of Health,* 851 P.2d 1212, 1214 n. 2 (Utah Ct.App. 1993) (quoting *Larson v. Overland Thrift & Loan,* 818 P.2d 1316, 1321 n. 5 (Utah Ct.App.1991)); *see also State v. Phathammavong,* 860 P.2d 1001, 1002 n. 2 (Utah Ct.App.1993).

ulent concealment of misconduct includes concealment of a defendant's identity.

## CONCLUSION

The district court correctly granted Weed's motion for summary judgment. The medical malpractice statute of limitations was not tolled until McDougal discovered the proper defendant's identity. The limitations period was tolled only until McDougal discovered both his injury and that it was possibly the result of medical malpractice. Additionally, McDougal failed to assert a sufficient fraudulent concealment claim. Thus, Weed was entitled to judgment as a matter of law. Accordingly, we affirm.

BENCH and ORME, JJ., concur.