358 S.E.2d 810

**Richard L. HICKMAN, et al.**

v.

**Francis J. GROVER**

v.

**ELECTRO–MAGIC, INC., etc.**

**No. CC961.**

Supreme Court of Appeals of West Virginia.

June 16, 1987.

George E. Lantz, Lantz, Rudolph & Palmer, Parkersburg, for Hickman.

Robert L. Bays, Morris & Ruley, Parkersburg, for Grover.

Richard D. Jones, Kay, Casto & Chaney, Charleston, for appellee.

BROTHERTON, Justice:

This is a certified question from the Circuit Court of Wood County in a products liability case. The facts are not in controversy and are stipulated.

On December 20, 1982, Richard L. Hickman was working at National Muffler Service in Parkersburg, West Virginia, when Francis J. Grover arrived at the station to fill a small, portable air tank manufactured by the third-party defendant, Electro-Magic, Inc. Grover attached the tank to the air line at the muffler shop and started filling the tank. Both Hickman and Grover assumed that the tank would fill until the pressure switch would automatically cut off the air flow in the line. Instead, the tank exploded, with fragments striking Hickman.

Two days later, on December 22, Hickman was fully aware that his injuries were caused by the air tank, and a fragment of the air tank, showing the tank's manufacturer, was found.

During late summer and early fall of 1984, Hickman was being represented by his current counsel, George E. Lance, who was then negotiating with Grover's insurance carrier. On September 20, 1984, Lance was advised by Grover's insurance representative that the fragments of the air tank had been sent to an engineer for evaluation.

On November 8, 1984, Hickman filed a complaint in the Circuit Court of Wood County against Francis J. Grover. Grover was the only defendant named in the complaint. The manufacturer of the air tank, Electro-Magic, was not included. Grover timely answered the complaint, and on December 19, 1984, the day before the two-year statute of limitations ran, filed a third-party complaint against Electro-Magic. On the same day Grover's counsel advised Hickman's counsel by telephone that the third-party complaint had been filed, and indicated to him that the engineer who

examined the tank had opined that the air tank was defectively manufactured. On April 23, 1985, Hickman was provided with a copy of the report, which indeed found the air tank to be defective.

On June 17, 1985, Hickman served upon Electro-Magic a pleading entitled "Cross-complaint of plaintiffs against Electro-Magic, Inc., a corporation, third-party defendant." Electro-Magic moved to dismiss on the grounds that the claim was barred by the applicable statute of limitations and that it would be necessary to obtain leave of court. In response, the plaintiff moved the court for leave to file an amended complaint for the purpose of asserting the claim against Electro-Magic, Inc.

On August 1, 1985, it was ordered that the cross-complaint of Hickman against Electro-Magic be dismissed and that leave was granted to Hickman to file his amended complaint to assert his claim against Electro-Magic, with the latter being permitted to raise the statute of limitations defense. Thereafter an amended complaint was filed by Hickman and Electro-Magic moved to dismiss on the ground that the two-year statute of limitations had expired.

The trial was bifurcated so that the statute of limitations issue could be tried separately. A jury was impaneled and four special interrogatories were given to the jury. The interrogatories and the jury's answers are as follows:

1. On what date do you find that the plaintiff was injured?

A. December 20, 1982.

2. On what date do you find that the plaintiff knew of his injuries?

A. December 22, 1982.

3. On what date do you find that the plaintiff knew his injuries were caused by the air tank having exploded?

A. December 22, 1982.

4. On what date do you find that the plaintiff either knew or by the exercise of reasonable diligence should have known or discovered what probably caused the tank to explode?

A. December 19, 1984.

The fourth and last interrogatory was given over the objection of Electro-Magic, Inc. on the ground that the discovery rule, if applicable, does not allow a plaintiff to avoid the statute of limitations simply because he does not know of the specific defect in a specific product. The trial court, on February 3, 1986, denied Electro-Magic's motion for summary judgment. Following this ruling, Electro-Magic moved to certify questions to this Court relative to its statute of limitations defense. The following questions were certified to this Court:

> In a products liability personal injury action, does the plaintiff's cause of action accrue at the time the plaintiff knows or by reasonable diligence should know (1) his injury and (2) the identity of the product and its manufacturer that caused such injury or; rather, does the plaintiff's cause of action accrue at the time the plaintiff knows or by reasonable diligence should know of (1) his injury; (2) the identity of the product and its manufacturer that caused the injury; *and* (3) that the product was defective as a result of the conduct of its manufacturer.

We draft a new rule to answer this question.[1]

There are three issues that present themselves to the Court from this case. The first is whether we should extend the discovery rule to cover products liability cases. The next question is what exactly is necessary for the plaintiff to have "discovered" his cause of action. Finally, we will address whether a third-party defendant may be added to an amended complaint by the plaintiff after the statute of limitation has run.

### I.

In deciding whether to extend the discovery rule in products liability cases, we

must first start with the applicable statute of limitations, in this case W.Va. Code § 55–2–12 (1981), which states: "Every personal action for which no limitation is otherwise prescribed shall be brought ... within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries." The two-year time rule in the statute is fixed by the legislature, and this Court has no power to change it. However, the time in which an action can be said to have accrued is a matter subject to judicial interpretation. Thus the question before us now is when does the action accrue for statute of limitation purposes.

Before today, the statute of limitations for products liability actions was said to have run from the date of injury. "The statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues which is when the injury is inflicted." Syl. pt. 1, *Jones v. Trustees of Bethany College*, 177 W.Va. 168, 351 S.E.2d 183 (1986). From an administrative point of view, this created a very neat, workable test. However, it also produced several harsh results. In *Gray v. Wright*, 142 W.Va. 490, 96 S.E.2d 671 (1957), a medical malpractice action, the plaintiff brought an action against a doctor who failed to remove an instrument from the plaintiff's abdomen following gall bladder surgery. The plaintiff did not discover the injury until after the statute of limitations had run. Nevertheless, we held that, in absence of actual knowledge, fraud, or concealment on the part of the surgeon, relief was barred where the action was not brought within the applicable limitations period. *See* 142 W.Va. at 499–500, 96 S.E.2d at 676–77. Thus the plaintiff never really had a chance to sue, despite the fact that he was injured and had no reasonable opportunity to discover the injury before the limitations period had run.

---

1. The circuit court made the following ruling relative to this question:

> In a products liability personal injury action the plaintiff's cause of action accrues at the time plaintiff knows or by reasonable diligence should know of (1) his injury; (2) the identity of the product and its manufacturer

that caused such injury; and (3) that the product may have been defective.

While we are not sure that this ruling necessarily conflicts with our holding today, we find the phrase "may have been" to be ambiguous and we therefore decline to adopt this test.

Recognizing these inequities, we reversed *Gray* in *Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 144 S.E.2d 156 (1965), adopting a "discovery rule" for cases of medical malpractice. Calling attention to the inequities, we noted: "It simply places an undue strain upon common sense, reality, logic and simple justice to say that a cause of action had 'accrued' to the plaintiff until the X-ray examination disclosed a foreign object within her abdomen and until she had a reasonable basis for believing or reasonable means of ascertaining that the foreign object was within her abdomen as a consequence of the negligent performance of the hysterectomy." *See* 149 W.Va. at 792, 144 S.E.2d at 161. Application of a rule under which the statute of limitations would run although the plaintiff "did not know and had no reasonable means of knowing of the wrong until after the expiration of the period of limitation" was unrealistic, cruelly harsh, and was a rule which placed "a burden upon the wronged plaintiff which he or she would rarely, if ever, be able to carry." 149 W.Va. at 787, 144 S.E.2d at 159.

The discovery rule in medical malpractice cases has also been extended to legal malpractice. *See, e.g., Family Savings & Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 207 S.E.2d 157 (1974). However, it has not been extended to products liability. In *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986), we hinted that we might extend the discovery rule to products liability actions:

> We acknowledge that other courts have expanded the discovery rule to product liability cases dealing with chemicals, drugs, asbestosis, and products like the Dalkon Shield. The common denominator in these cases is that the product often causes an injury only after a lengthy period of exposure or the injury surfaces only after a considerable period of time from the date of exposure. Because the injury initially is not sufficiently pronounced to put a plaintiff on notice that he has been injured, courts conclude the statute of limitations does not begin

to run until the plaintiff is aware of the injury or through reasonable diligence should have been aware of the injury. *See* 177 W.Va. at 170, 351 S.E.2d at 185. The United States District Court for the Southern District of West Virginia has predicted that we, if given the opportunity, would embrace the discovery rule in products liability personal injury actions. *See Pauley v. Combustion Engineering, Inc.,* 528 F.Supp. 759, 764–65 (S.D.W.Va.1981). They were correct. Justice is not done when an injured person loses his right to sue before he discovers if he was injured or who to sue. We will, therefore, modify the rule for the statute of limitations in products liability cases as set out below.

## II.

■ In answer to the circuit court's question, we now hold as follows: In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product had a causal relation to his injury. This rule in products liability cases will allow the plaintiffs a fair chance to sue, while upholding the purposes behind the statute of limitations.

In a progressive or creeping disease or injury, many plaintiffs will often not realize that they were actually injured. *See, e.g., Louisville Trust Co. v. Johns-Manville Products Corp.,* 580 S.W.2d 497 (Ky.1979) (asbestos).[2] Other plaintiffs will realize they are injured, but have no reason to connect the product with the injury. *See e.g., Mack v. A.H. Robins Co.,* 573 F.Supp. 149 (D.Ariz.1983) (Dalkon Shield). In both instances, it would be a miscarriage of justice to hold that the plaintiff's claim was barred by the statute of limitations. A plaintiff does not have enough information to sue until he knows that he has been injured, he knows the identity of the maker of the product, and he knows that the

---

**2.** *See also Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183, 185 (1986) and

the cases cited therein.

product had a causal relation to his injury. Under the new rule, these claims would be protected from the bar of the statute of limitations.

In traumatic injury cases, the plaintiff will almost always know that he was injured and what caused his injury. Therefore, in these cases the statute of limitations will almost always begin to run from the time of the injury. *See Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183, 185 (1986). There are, however, conceivable instances where this would not be true. For example, if the defendant is rendered mentally incompetent by the accident, he may not know what caused the injury, or even if he was injured at all. In such a case, the statute of limitations would probably be tolled. *See, e.g., Sobin v. M. Frisch & Sons,* 108 N.J.Super. 99, 104–05, 260 A.2d 228, 231–32 (1969). We could also envision a situation where there is a hidden cause to an accident which no one had reason to suspect at the time. For example, in the current case, if it is found after later inspection that the air tank exploded because a piece flew off of a grinder and struck the air tank, then the cause of action against the grinder manufacturer would not accrue until, by an exercise of reasonable diligence, the plaintiff could have discovered both the identity of the maker of the grinder and the grinder's causal connection to the accident. Finally, it may be possible for a plaintiff to suffer a traumatic injury, but be unaware of its consequences. However, he would have an extraordinarily high burden of demonstrating that he did not know and could not have timely known of its existence. *See Jones,* 177 W.Va. at 172, n. 4, 351 S.E.2d at 187, n. 4.

Hickman asks us to take this one step further. He suggests that we add a another requirement, *i.e.,* that the product was defective as a result of the conduct of its manufacturer. Indeed, this is a big requirement, because such knowledge is often not known with legal certainty until after the jury returns its verdict. At the very least, this knowledge would be very difficult to obtain, except during the discovery phase of trial. Thus, we would have a situation where the statute of limitations would almost never accrue until after the suit was filed. This would almost abrogate the statute of limitations in products liability claims. We cannot accept such a holding.

■ Hickman's amended complaint against Electro-Magic does not meet the discovery rule which we enunciate in this case. Immediately upon the tank exploding Hickman knew he was injured. He discovered the extent of his injuries shortly thereafter. The cause of the injury was also discovered almost immediately. Everyone knew that the air tank had exploded and that fragments of the tank had struck Hickman. One of the fragments that was found clearly showed the name and address of the manufacturer. A jury impaneled specially for the statute of limitations question found that the defendant knew that he was injured and that the air tank caused his injuries on December 22, 1982. It was on that date, therefore, that his cause of action accrued. The two-year statute of limitations under W.Va. Code § 55–2–12 would have therefore run on December 22, 1984. Hickman did not file the "cross-complaint" against Electro-Magic until June 17, 1985, several months later.

### III.

■ Nevertheless, the statute of limitations is not applicable to Hickman in this instance. In the recent case of *Rakes v. Fairmont Mobile Homes, Inc.,* 178 W.Va. 152, 358 S.E.2d 236 (1987), we discussed the issue of whether a plaintiff could amend his complaint to bring a direct action against a third-party defendant after the applicable statute of limitations period. In holding in the affirmative, we noted in the syllabus:

> Under Rule 15(a), of the West Virginia Rules of Civil Procedure, a plaintiff may amend the original complaint to bring a direct action against a thirty-party defendant if the amended complaint is based on the same transaction or occurrence set out in the original complaint, unless the third-party defendant can show some substantial prejudice.

In this case, the amended complaint was based on the same occurrence as the original complaint and, since the third-party defendant was already actively defending the case, there would be no prejudice to his admission as a first-party defendant. We therefore hold that this case is controlled by *Rakes* and order the circuit court to allow Hickman to amend his complaint to set out a direct action against Electro-Magic, Inc., etc.

Certified questions answered.