765 P.2d 1003

Ruth A. LAWHON, surviving wife of Gideon A. Lawhon, for and on behalf of Ruth A. Lawhon, Robert G. Lawhon and Patricia A. Lawhon, Plaintiffs–Appellants,

v.

L.B.J. INSTITUTIONAL SUPPLY, INC., an Arizona corporation; and Disco, Inc., a Georgia corporation, Defendants–Appellees.

No. 1 CA–CIV 9398.

Court of Appeals of Arizona, Department A.

May 17, 1988.

Review Denied Jan. 20, 1989.

Albert E. Van Wagner, P.C. by Albert E. Van Wagner, Jr. and C. Steven McMurry, Phoenix, for plaintiffs-appellants.

Crampton, Woods, Broening & Oberg by Terrence P. Woods, Brian Holohan, Phoenix, for defendant-appellee L.B.J. Institutional Supply, Inc.

Evans, Kitchel & Jenckes, P.C. by Amy R. Coy, Brad K. Keogh, Phoenix, for defendant-appellee Disco, Inc.

## OPINION

CORCORAN, Judge.

Appellants Lawhon appeal from the granting of a motion for judgment on the pleadings in favor of two defendants in a wrongful death action. The trial court considered matters outside the pleadings and the motion was treated as a motion for summary judgment. *See* rule 12(c), Arizona Rules of Civil Procedure. Defendants' motion was based on the expiration of the applicable statute of limitations. We reverse the judgment, based on our interpretation of *Anson v. American Motors Corp.*, 155 Ariz. 420, 747 P.2d 581 (App. 1987).

### 1. *Facts*

Gideon Lawhon died on November 10, 1982, shortly after eating at a restaurant, Juantanamera's, Inc. Lawhon's family investigated the death and concluded that Lawhon, a chronic asthmatic, had suffered a fatal reaction to the sulfite agent used by the restaurant to keep fresh vegetables from prematurely wilting and turning brown.

On April 4, 1983, Lawhon's widow filed a wrongful death action, which included products liability counts based upon the sulfite agents in the food. The complaint named the restaurant and identified the manufacturer and distributor of the sulfite agents as "John Does."

In August 1983, Albert E. Van Wagner, Jr., Esq., Lawhon's attorney, was advised by Richard N. Crenshaw, Esq., Juantanamera's attorney, that the product used by Juantanamera's was Whiten–All, packaged under the Red & White Quality brand by Red & White International, a division of Federated Foods, Inc. Crenshaw was not sure whether the product was purchased through distributor A.M. Lewis, Inc. or L.B.J. Institutional Supply, Inc. Through telephone conversations and correspondence, Van Wagner subsequently verified that A.M. Lewis distributed Red & White Quality brand products in the Phoenix area and that the identity of the manufacturer of these products was Langlois Co.

Lawhon filed a first amended complaint on April 6, 1984, adding Alfred M. Lewis, Inc. and Langlois Co. as named defendants. Lewis and Langlois were alleged to be the distributor and manufacturer, respectively, of the sulfite product. Lawhon deleted all other references to manufacturers or distributors of sulfite products as John Doe defendants and identified other John Doe defendants as employees of Juantanamera's.

Before filing the first amended complaint, Lawhon did not attempt to ascertain through any formal discovery whether L.B.J. was the distributor of the sulfite product ingested by Gideon Lawhon. In May 1984 Van Wagner received a Federal Drug Administration report concerning the use of sulfite agents at Juantanamera's. This report identified L.B.J. as a possible distributor of sulfite products to Juantanamera's.

Van Wagner did not depose Juantanamera's employees until January 1986. During one deposition, Van Wagner was again informed that L.B.J. was a possible distributor. Langlois later subpoenaed L.B.J.'s

records, which revealed that L.B.J. had sold a sulfite product to Juantanamera's before Gideon Lawhon's death. Langlois's attorneys later informed Van Wagner that L.B.J. had purchased the sulfite product from the manufacturer, Disco, Inc.

On March 31, 1986, Lawhon filed a second amended complaint, for the first time naming L.B.J. and Disco as defendants. Shortly thereafter, L.B.J. and Disco filed a joint motion for judgment on the pleadings on grounds that any action against them was barred by the statute of limitations.

The joint motion of L.B.J. and Disco was based on A.R.S. § 12–542, which provides in part:

> Except as provided in § 12–551 there shall be commenced and prosecuted within two years after the cause accrues, and not afterward, the following actions:
>
> . . . .
>
> 2. For injuries 'done to the person of another when death ensues from such injuries, which *action shall be considered as accruing at the death of the party injured.*

(Emphasis added.)

The second amended complaint was filed more than two years after Gideon Lawhon's death. Therefore, L.B.J. and Disco argued that the suit against them was barred. They also contended that their inclusion as defendants in the second amended complaint could not relate back to the original complaint because the first amended complaint had deleted any reference to John Doe manufacturers or suppliers.

Lawhon made two arguments to defeat the motion: (1) that equitable considerations should permit a relation back of the addition of L.B.J. and Disco, and (2) that the "discovery rule" should be applied to wrongful death cases. These arguments were made before this court's decision was filed in *Anson.*

## 2. *Applicability of Anson*

In *Anson,* this court held that A.R.S. § 12–542(2) is unconstitutional insofar as it mandates that a cause of action accrues at death. The court further held that the discovery rule applies to wrongful death actions.

Both L.B.J. and Disco filed answering briefs asserting that *Anson* does not affect the outcome of this litigation. They argue that under the discovery rule, the statute of limitations begins to run when a plaintiff knows, or in the exercise of reasonable care should know, that a cause of action exists, even though the plaintiff may not know the identity of the defendant. We disagree with this formulation of the discovery rule because knowledge of the identity of the defendant is a critical element in determining when a cause of action accrues.

Our examination of the contours of the discovery rule has failed to reveal an Arizona case that directly considers the importance of a plaintiff's knowledge of the defendant's identity. The discovery rule in Arizona was initially formulated as follows: "a cause of action ... accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time." *Mayer v. Good Samaritan Hosp.,* 14 Ariz.App. 248, 252, 482 P.2d 497, 501 (1971). More recently, our court has stated: "Pursuant to the discovery rule, a cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct." *Anson,* 155 Ariz. at 423, 747 P.2d at 584. While a fair interpretation of the discovery rule formulated in *Anson* might lead to the conclusion that an action does not accrue until the *identity of the defendant* is known, *Anson* did not address the issue of a plaintiff's knowledge of the identity of the defendant. In addition, in theory a plaintiff could possibly know of "the defendant's negligent conduct" without knowing the defendant's identity. Accordingly, in the absence of direct authority on this issue in our state, we must look to the analysis provided by other courts.

### 3. *Other Courts' Interpretations*

The Second Circuit has discussed the discovery rule in the context of the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (FTCA). *Barrett v. United States*, 689 F.2d 324 (2d Cir.1982) (reasoning adopted in *Anson*). That court held that genuine issues of material fact about the application of the discovery rule precluded summary judgment on plaintiff's cause of action arising out of chemical warfare experiments conducted by the United States Army in the early 1950s. 689 F.2d at 330.

The *Barrett* court began its analysis of the discovery rule by reference to *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick*, the plaintiff argued that his FTCA claim accrued when he was first informed that an antibiotic was negligently administered and not when he knew that he had suffered a hearing loss that probably resulted from treatment with an antibiotic. The court rejected plaintiff's contention, concluding that once the plaintiff was aware the antibiotic caused his injury, he simply could have consulted experts to discover that he had a cause of action for negligent administration of the drug. The court expressed its reasoning as follows:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and *the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.* The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and *who* has inflicted the injury. He is no longer at the mercy of the latter.

*Barrett*, 689 F.2d at 328, *quoting from Kubrick*, 444 U.S. at 122, 100 S.Ct. at 359 (emphasis in *Barrett*).

From the Court's analysis in *Kubrick*, the *Barrett* court concluded that a plaintiff must be aware of both *what* caused the injury and *who* caused it before the cause of action accrues. 689 F.2d at 330. The court thus determined that summary judgment was inappropriate where factual disputes existed about whether the plaintiff estate exhibited reasonable efforts to find *who* was responsible and whether the government's concealment would have thwarted any diligent attempt by the estate to find those responsible.

Another post–*Kubrick* discovery rule case is *Liuzzo v. United States*, 485 F.Supp. 1274 (E.D.Mich.1980). The *Barrett* court pointed out that both cases present "an instance in which knowledge of the identity of the tortfeasor is a critical element to the accrual of a claim." *Barrett*, 689 F.2d at 330, *quoting Liuzzo*, 485 F.Supp. at 1283. In *Liuzzo*, the court held that children of a slain civil rights worker were not barred by a two-year statute of limitations applicable to tort claims against the government. The court found that when Mrs. Liuzzo was murdered in 1965, her children accepted as a fact that three Ku Klux Klansmen were solely responsible for their mother's death. It was not until 1975 that the plaintiffs obtained knowledge that agents of the Federal Bureau of Investigation were possibly involved in the murder. The court held that the plaintiffs' cause of action against the government did not accrue until the children became aware of possible FBI involvement. 485 F.Supp. at 1284.

Like *Barrett*, *Liuzzo* began with an analysis of *Kubrick* and concluded that "the language and rationale of *Kubrick* indicate that ignorance of the 'who' element of causation should, like ignorance of the 'what' element of causation, postpone accrual of a cause of action, at least in certain circumstances." *Liuzzo*, 485 F.Supp. at 1281.

We note that the Seventh Circuit Court of Appeals has held that when an injury is apparent, "it is the duty of the victim of the tort to discover the negligent acts and file a claim within two years of the injury." *Steele v. United States*, 599 F.2d 823, 828 (7th Cir.1979). However, we find that this analysis is not relevant to our inquiry for

two reasons. First, unlike the facts in our case, the facts in *Steele* do not indicate that plaintiffs faced any obstacles in ascertaining the identity of the tortfeasors. Second, and most importantly, *Steele* was decided prior to *Kubrick* and does not unequivocally apply the discovery rule. Because *Anson* requires the application of the discovery rule, only those cases that clearly apply the rule are relevant to our analysis.

While federal courts have dealt directly with the issue of the defendant's identity, we note that the Supreme Court of Appeals of West Virginia has articulated the following discovery rule:

> In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) *the identity of the maker of the product,* and (3) that the product has a causal relation to his injury.

*Hickman v. Grover,* 358 S.E.2d 810, 813 (W.Va.1987) (emphasis added). The court explained:

> A plaintiff does not have enough information to sue until he knows that he has been injured, he knows the identity of the maker of the product, and he knows that the product had a causal relation to his injury.

*Hickman,* 358 S.E.2d at 813–14.

 When *Anson* is viewed in conjunction with *Barrett, Liuzzo* and *Hickman,* it becomes apparent that a cause of action "accrues" when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by a *particular* defendant's negligent conduct. The cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation.

Based on this analysis, we need not consider whether the relation-back provisions of rule 15, Arizona Rules of Civil Procedure, are applicable to the second amended complaint.

### 4. *Conclusion*

 Whether Lawhons knew or with the exercise of reasonable diligence could have known that L.B.J. and Disco caused the death of Gideon Lawhon is a factual issue. L.B.J. and Disco have presented many factual arguments that have not been considered by the trial court because that court determined as a matter of law that the cause accrued on the date of Gideon Lawhon's death.

This court's function is not to resolve disputed facts. Therefore, the judgment of the trial court is reversed and this matter is remanded for proceedings consistent with this opinion.

JACOBSON and BROOKS, JJ., concur.