James M. ARAGON, Plaintiff and Appellant,

v.

CLOVER CLUB FOODS COMPANY, a Utah corporation; Borden, Inc., a New Jersey corporation; Casa Herrera, Inc., a California corporation; and John Does I through X, inclusive, Defendants and Appellees.

Case No. 920106–CA.

Court of Appeals of Utah.

July 9, 1993.

Douglas M. Durbano and Paul H. Johnson (argued), Durbano & Associates, Ogden, for appellant.

Allan T. Brinkerhoff and Steven J. Aeschbacher (argued), Ray, Quinney & Nebeker, Salt Lake City, for appellees Clover Club Foods and Borden, Inc.

Jay E. Jensen and M. Douglas Bayly (argued), Christenson, Jensen & Powell, P.C., Salt Lake City, for appellee Casa Herrera, Inc.

Before BENCH, BILLINGS and ORME, JJ.

BENCH, Judge:

Plaintiff, James M. Aragon, appeals two summary judgments that resulted in the dismissal of his claims arising out of an industrial accident. We affirm the summary judgment in favor of Borden. We vacate the summary judgment in favor of Casa Herrera and remand for additional proceedings.

## BACKGROUND

On December 16, 1985, Aragon was injured by a dough mixing machine while working for Clover Club Foods, a wholly-owned subsidiary of Borden. On October 6, 1989, Aragon sent Clover Club a Notice of Intent to Commence Product Liability Action. The notice requested the identity of the manufacturer of the mixer, but the information was not provided.

On November 10, 1989, Aragon filed suit in federal district court against Clover Club and John Does I–X. On January 11, 1990, Aragon filed his first formal discovery request, seeking the identity of the mixer's manufacturer. Since the suit was dismissed from federal court for lack of diversity before a discovery response was filed, Clover Club did not identify Casa Herrera at that time.

On May 11, 1990, Aragon refiled his complaint in state court. He again served discovery requests on Clover Club, requesting the identity of the mixer's manufacturer. On July 13, 1990, Clover Club finally responded to the discovery requests, identifying Casa Herrera as the manufacturer of the mixer.

On August 14, 1990, Aragon filed a motion for leave to name Casa Herrera as a party defendant. Casa Herrera was later formally joined as a party defendant and served with a complaint. Casa Herrera failed to respond to the complaint and a default judgment was entered against it.

The default judgment was later set aside and the trial court eventually granted Casa Herrera's motion for summary judgment, holding that Aragon's claims were time-barred. The trial court also granted summary judgment to defendant Borden, holding that Borden was immune from suit under the exclusive remedy provision of Utah's Workers' Compensation Act. Utah Code Ann. § 35–1–60 (1988).

## ISSUES

First, Aragon argues that his claim against defendant Casa Herrera is not time-barred under the applicable statute of limitation because he did not discover that Casa Herrera was the manufacturer of the mixing machine until after the limitation period had run. Second, Aragon argues that defendant Borden is not immune from suit under the Utah Workers' Compensation Act because Borden was not his employer.[1]

---

1. Aragon also claims that the trial court abused its discretion when it denied his Rule 56(f) motion asking for additional time to conduct discovery. Following Borden's motion for summary judgment on the affirmative ground that it was Aragon's employer, Aragon sought informa-

## STANDARD OF REVIEW

Inasmuch as a trial court's grant of summary judgment involves only legal conclusions, this court reviews the trial court's rulings under a correction-of-error standard. *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991).

## ANALYSIS

### Statute of Limitation

Aragon asserts that the trial court incorrectly determined that his claim against Casa Herrera was time-barred by Utah Code Ann. § 78–15–3 (1992).[2] Section 78–15–3 governs product liability claims and provides:

A civil action under this chapter shall be brought within two years from the time the individual who would be the claimant in such action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause.

Statutes of limitation "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983) (quoting *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). Limitation periods begin to run when a cause of action has accrued, which occurs "upon the happening of the last event necessary to complete the cause of action." *Id.* This general rule may be subject to the "discovery rule," such that the running of the statute of limitation is tolled until the plaintiff discovers (or should have discovered) all of the facts that form the basis for the cause of action. The legislature has statutorily incorporated discovery rules in several statutes of limitation.[3] Other discovery rules have been adopted by judicial action.[4]

Section 78–15–3 explicitly incorporates a discovery rule, given its "discovered, or in the exercise of due diligence should have discovered" language. The statute further refers to discovery of "both the harm and its cause." Casa Herrera nevertheless challenges the application of section 78–15–3 by disputing the meaning of the word

tion regarding the business relationship between Borden and Clover Club to discover whether Borden was in fact Aragon's employer. The trial court, however, granted Borden's motion for summary judgment without allowing Aragon an opportunity to conduct discovery on Borden's affirmative defense. Given our ruling that Borden is entitled to summary judgment as a matter of law, none of the factual information sought by Aragon in the motion would have altered the outcome of the trial court's ruling, nor our ruling. We therefore do not reach this claim of error.

**2.** At the time of his injury, Aragon's claim was governed by Utah Code Ann. § 78–12–25 (1992). That statute created a four year limitation period for actions for which no limitation period was otherwise provided by law. Section 78–12–25 applied because the former version of section 78–15–3, which normally would have applied to product liability claims, had been ruled to be an unconstitutional statute of repose. *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985). Subsequently, the supreme court clarified that former section 78–15–3 could not be used as a statute of limitations. *Raithaus v. Saab–Scandia of Am., Inc.*, 784 P.2d 1158, 1161–62 (Utah 1989). In April 1989, while the four year time period granted by section 78–12–25 was still in effect, former section 78–15–3 was revised to explicitly create a statute of limitation for product liability cases. Since the time limitations of section 78–12–25 had not lapsed when section 78–15–3 was adopted, section 78–15–3 replaced section 78–12–25 and now governs Aragon's claim. *See Greenhalgh v. Payson City*, 530 P.2d 799, 803 (Utah 1975) (a new statute of limitation may extend the applicable period for filing so long as the old statute's time period has not yet expired).

**3.** *See, e.g.*, Utah Code Ann. § 78–12–19 (1992) (recovery of any estate sold by an executor or administrator); § 78–12–26(1) (waste or trespass by underground works on a mining claim); § 78–12–26(2) (loss of branded livestock); § 78–12–26(3) (fraud); § 78–12–27 (actions against corporate stockholders or directors); § 78–14–4 (health care malpractice).

**4.** *See, e.g., Klinger v. Kightly*, 791 P.2d 868 (Utah 1990) (surveyor negligence); *Myers v. McDonald*, 635 P.2d 84 (Utah 1981) (wrongful death action where plaintiffs did not know of their ward's death until after the statute of limitation had run); *Christiansen v. Rees*, 20 Utah 2d 199, 436 P.2d 435 (1968) (medical malpractice); *Merkley v. Beaslin*, 778 P.2d 16 (Utah App.1989) (legal malpractice).

"cause." Casa Herrera argues that Aragon knew the "cause" of his injury was the mixer, and, therefore, the limitation period began to run on the day of his injury. Aragon contends, on the other hand, that the "cause" of his injury was not discovered until he knew the identity of the mixer's manufacturer, Casa Herrera.

The interpretation of "cause" in this context is a question of first impression in Utah. It has, however, been addressed in other states. In *North Coast Air Services, Ltd. v. Grumman Corp.*, 111 Wash.2d 315, 759 P.2d 405 (1988), the Washington Supreme Court interpreted a statute identical in all material respects to the current version of Utah Code Ann. § 78–15–3.[5] It expressly rejected the argument put forth by Casa Herrera in this case that "cause" equates with the traumatic event. The Washington court held that "cause" referred to the "cause in fact," i.e., the design defect that caused the harm. The court reasoned that equating "cause" with the traumatic event alone would require plaintiffs "to begin a suit before they either had or should have had any knowledge of a possible legal responsibility of this defendant." *Id.* 759 P.2d at 408–09. In *Orear v. International Paint Co.*, 59 Wash.App. 249, 796 P.2d 759 (1990) *cert. denied*, 116 Wash.2d 1024, 812 P.2d 103 (1991), the Washington Court of Appeals relied upon the reference in *North Coast* to the necessity for "knowledge of a possible legal responsibility *of this defendant*" as indicating that a cause of action against a product manufacturer accrues only after the plaintiff discovers the identity of the product manufacturer. *Id.* 796 P.2d at 763 (see cases cited therein). Similarly, in *Lawhon v. L.B.J. Institutional Supply*, 159 Ariz. 179, 765 P.2d 1003, 1007 (App.1988), the Arizona Court of Appeals held that a "cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation." In *Hickman v. Grover*, 178 W.Va. 249, 358 S.E.2d 810 (W.Va.1987), the West Virginia Supreme Court of Appeals held

that: "A plaintiff does not have enough information to sue until he knows that he has been injured, *he knows the identity of the maker of the product*, and he knows that the product had a causal relation to his injury." *Id.* 358 S.E.2d at 813 (emphasis added).

■ This court adopts the rule followed in the foregoing cases. We hold that the reference to "cause" in section 78–15–3 tolls the running of the statute of limitation until the plaintiff discovers, or in the exercise of due diligence should have discovered, the identity of the manufacturer. Absent such information, a plaintiff simply cannot bring suit. The limitation period should not be allowed to run before suit can be effectively filed.

### Due Diligence

■ Casa Herrera asserts that even if its identity must be discovered before the statute of limitation begins to run, Aragon's complaint is nevertheless time-barred because Aragon did not use due diligence in discovering Casa Herrera's identity. Section 78–15–3 states that the plaintiff must bring an action within two years from when the plaintiff discovered the harm and its cause, "or in the exercise of due diligence should have discovered" both the harm and its cause. Casa Herrera claims that as a matter of law Aragon was not duly diligent in discovering Casa Herrera's identity.

Due diligence is a highly fact-sensitive determination best made by the trial court. What constitutes due diligence "must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so." *Weber v. Snyderville West*, 800 P.2d 316, 318–19 (Utah App.1990) *cert. denied*, 815 P.2d 241 (Utah 1991) (quoting *Parker v. Ross*, 117 Utah 417, 217 P.2d 373, 379 (Utah 1950)). While Aragon admittedly took a long time to discover the identity of the manufactur-

---

**5.** The only difference between the Washington and Utah statutes is that the Utah statute contains the word "both" preceding "the harm and its cause." *Compare* Wash.Rev.Code § 7.72.-060(3) *with* Utah Code Ann. § 78–15–3 (1992).

er, it is also evident that Aragon did seek the manufacturer's identity from Clover Club, but was denied it. There is no indication in the record that Aragon had any way to identify Casa Herrera as the manufacturer of the mixer, except through Clover Club. We therefore cannot rule as a matter of law that Aragon should have discovered Casa Herrera's identity before he did.

Inasmuch as we are only reviewing the legal content of the trial court's grant of summary judgment, it would be improper for us to attempt to determine from the existing record whether Aragon was in fact duly diligent. Aragon's due diligence in determining Casa Herrera's identity is an unresolved question of fact. *See Lawhon,* 765 P.2d at 1007 (the court's function "is not to resolve disputed facts" such as due diligence); *North Coast Air Servs.,* 759 P.2d at 411 (due diligence was an unresolved question of fact precluding summary judgment); *Orear,* 796 P.2d at 764 (whether plaintiff should have discovered defendant's identity as a potentially responsible party is an issue of fact that precludes summary judgment). We must therefore remand the issue of due diligence to the trial court to allow both parties to address it in light of today's ruling. On remand, the trial court must determine factually whether Aragon was duly diligent in discovering Casa Herrera's identity. If he was, the action is not time-barred because Casa Herrera was joined as a defendant shortly after Aragon ascertained its identity. If, on the other hand, the trial court determines that Aragon, in the exercise of due diligence, should have discovered the identity of Casa Herrera more than two years before Casa Herrera was joined as a party, the action against Casa Herrera is time-barred.

### Workers' Compensation Immunity

Aragon asserts what is, in essence, a derivative liability claim against Borden arising out of Clover Club's actions. Borden argues that it is immune from suit, as a matter of law, under the exclusive remedy provision of the Utah Workers' Compensation Act, Utah Code Ann. § 35–1–60 (1988). The statute provides, in relevant part:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent, or employee of the employer ... and no action at law may be maintained against an employer or against any officer, agent, or employee of the employer based upon any accident, injury or death of an employee.

The Utah Supreme Court has held that the exclusive remedy provision immunizes from liability, "[t]he immediate, or common law, employer, who actually pays compensation, and its officers, agents, and employees." *Pate v. Marathon Steel Co.,* 777 P.2d 428, 431 (Utah 1989).[6] Borden recognizes that it alone was not Aragon's immediate employer. It nevertheless argues that it qualifies as Aragon's "common law employer because it paid his salary and the workers' compensation insurance premi-

---

**6.** Borden argues that a compensation agreement previously signed by Aragon at an administrative hearing, which indicated that his "employer" was "Clover Club Foods Co./Borden," now bars Aragon, under the doctrine of res judicata, from disputing that Borden is his employer. *See Kirk v. Department of Commerce,* 815 P.2d 242, 243–44 (Utah App.1991) (administrative proceedings may have res judicata effect if proceedings are sufficiently court-like). Res judicata only applies, however, if the issue was actually litigated and the administrative tribunal had subject matter jurisdiction. *See SMP, Inc. v. Kirkman,* 843 P.2d 531, 533–34 (Utah App.1992) (industrial commission's ruling not binding be-

cause the commission lacked subject matter jurisdiction over contractual disputes between employers and employees). In the present case, the issue of whether Borden was Aragon's employer for purposes of immunity was never actually litigated. Furthermore, the industrial commission did not have subject matter jurisdiction over the question of immunity under section 35–1–60—a statutory defense that only arises in civil proceedings. The designation on the administrative compensation agreement that Aragon's employer was "Clover Club Foods Co./Borden" is therefore not determinative of the issue in this case.

ums."[7] Borden misreads *Pate.* Utah courts do not recognize "common law employer" as a distinct classification of employer. *Pate*'s passing reference to "common law employer" was not intended to create a new classification of employers; it was simply referring to the immediate employer, as opposed to a "statutory employer." As a result, any attempt to establish new guidelines for identifying "common law employers" is misdirected.

The material question in this case is whether Borden and Clover Club together constitute an employing unit analogous to the employing units created between joint venturers. In *Cook v. Peter Kiewit Sons Co.,* 15 Utah 2d 20, 386 P.2d 616 (1963), two companies entered into a joint venture to construct a tunnel. Because they were united for a common purpose, and because whatever one did would inure to the benefit of the other, both companies were treated as one "employing unit," and the employees of both companies were treated as being "engaged in the same employment." The supreme court recognized the need for consistency in construing the Workers' Compensation Act liberally to find coverage, even when finding coverage might be to the disadvantage of a particular plaintiff because it would preclude a third party suit by the employee against the purported employer.

> In regard to the protection of employees, if circumstances were such that it was necessary to classify the plaintiff as an employee of defendant Kiewit Construction Company to qualify for workmen's compensation, undoubtedly there would have been efforts to so classify him. This is not without justification. This court has frequently stated that the Act should be liberally construed and applied to afford coverage to the employee and give effect to the purposes of the Act. This rule of liberality in finding coverage to the employee is sound and is applicable here, even though plaintiff, having already obtained his award, now attempts to go contrary to this policy and "paddle for the other shore" in contending that he would not be covered by workmen's compensation as an employee of Kiewit.

*Cook,* 386 P.2d at 617 (footnote omitted). *See also Adamson v. Okland Constr. Co.,* 29 Utah 2d 286, 508 P.2d 805, 807 (1973) ("Fundamental standards of justice dictate that it would be inconsistent to apply the act liberally in favor of the injured workman in order to find coverage by one employer on a project, and then to reverse that policy and adopt a restrictive view to exclude coverage of another employer on the project so that a suit could be maintained against him."); *Wells v. Firestone Tire & Rubber Co.,* 421 Mich. 641, 364 N.W.2d 670, 675 (1984) ("If a statute is to be construed liberally when an employee seeks benefits, it should not be construed differently when the employer asserts it as a defense to a tort action").

In *Cook,* the supreme court also interpreted the third party cause of action rule found in section 35–1–62, (under which Aragon brings its suit against Borden), to apply only to "strangers to the employment."

> The language of the statute preserving an action against " * * * third persons" who are "not in the same employment * * * " seems plainly designed to apply to strangers to the employment and not to co-workers jointly engaged in the same endeavor. For example, an employee is working for a contractor in street construction when a passing motorist negligently injures him. He is entitled to the workmen's compensation; and also to sue the motorist. This is logical and just, because the fact the plaintiff is covered by workmen's com-

---

**7.** Borden makes two additional arguments worth mentioning. First, Borden argues that Clover Club is merely a profit center of Borden. This argument is unpersuasive, given the separate corporate status of Clover Club. Second, Borden argues that it is the statutory employer of Aragon under Utah Code Ann. § 35–1–42(5) because it "retain[ed] supervision or control" over him. Borden overlooks another key requirement of section 35–1–42(5)(a), that the purported statutory employer must procure work from a "contractor." Inasmuch as Clover Club is a subsidiary, not a contractor, section 35–1–42(5) clearly does not apply and Borden is not a statutory employer of Aragon.

pensation should give no protection to the motorist who wrongfully injured him. *Cook*, 386 P.2d at 617. The supreme court then held that, inasmuch as the defendant was engaged in a joint venture to construct the tunnel and share in the profit and losses, a single employing unit was created within which all of the employees of both companies were co-workers.

> Being so united for a common purpose for mutual profit, these companies became partners in the venture just the same as if two individuals had entered into it, and whatever one company and its employees did in furthering the project would inure to the benefit of the other. Accordingly, it would seem that Coker's act in paying premiums for workmen's compensation to protect itself against loss should also redound to the benefit of Kiewit and vice versa. It also follows that under such arrangement, the partnership entity should be regarded as the employing unit; and the employees of both companies as engaged in the same employment.

*Id.* at 618. Section 35–1–60 was held to bar suit against the employing unit and, consequently, both members of the joint venture. *Id.; see also Hammer v. Gibbons & Reed Co.*, 29 Utah 2d 415, 510 P.2d 1104, 1105 (1973) (since joint venturers bear the same relationship to one another as partners in a partnership, both were shielded from liability under section 35–1–60)).

In this case, we do not have a traditional joint venture. Clover Club is, however, indisputably a wholly-owned subsidiary of Borden. In this sense, Borden and Clover Club are combined in a joint effort and Borden shares in the profits and losses from the Clover Club operations. As in *Cook*, "if circumstances were such that it was necessary to classify the plaintiff as an employee of defendant [Borden] to qualify for workmen's compensation, undoubt-

edly there would have been efforts to so classify him." *Cook*, 386 P.2d at 617. Such efforts could be justified.[8]

A parent corporation clearly is not a stranger to a subsidiary employee's employment. By virtue of its sole ownership of the subsidiary corporation, the parent corporation has ultimate control over the subsidiary and its workplaces, regardless of whether it participates in daily operational decisions. Either directly or indirectly, a parent corporation always pays the wholly-owned subsidiary corporation's cost of workers' compensation coverage. The parent corporation therefore should logically receive the protection intended by the Workers' Compensation Act. As the supreme court recognized in *Cook*, the Act

> permits employers to pay fees for workmen's compensation insurance thereby safeguard[ing] themselves against possible disastrous claims for injuries which they may not be able to bear. This allows employers to so plan and manage their affairs as to make the wheels of industry run, with its resulting benefits, including jobs for employees. Both the giving of full effect to the act, and doing justice to the employer, require that it be so interpreted and applied as to afford the employer the intended protection as well as conferring the advantages it does upon the employee.

*Id.* at 618.

We therefore hold that when an injured worker asserts derivative liability, a parent corporation and its wholly-owned subsidiary are to be considered a single employing unit for purposes of section 35–1–60. To hold otherwise would allow an employee such as Aragon to " 'have his cake and eat it too' by getting the certain workmen's compensation and also the right to sue the employing unit for another and possibly greater recovery for his injury."

---

8. For example, in *Chatterley v. Omnico, Inc.*, 26 Utah 2d 88, 485 P.2d 667 (1971) the supreme court held a parent corporation liable for wages due to employees of its subsidiary. It reasoned that a controlling corporation should not be permitted to manage and operate a business from which it stands to gain whatever profit may be made, have the advantage of the efforts of those who serve it, and then use the nomenclature of another corporation as a facade to insulate it from responsibility for paying for such services.

*Id.* 485 P.2d at 670.

*Id.* Consequently, the trial court did not err in granting Borden summary judgment.

## CONCLUSION

We uphold the trial court's ruling that Borden was entitled to immunity under section 35–1–60 of the Workers' Compensation Act. The trial court erred, however, in holding that Aragon's claim against Casa Herrera was time-barred based on the date of trauma rather than the date of discovery of Casa Herrera's identity as the mixer's manufacturer. Inasmuch as there remains a factual question as to whether Aragon was duly diligent in discovering Casa Herrera's identity, we vacate the summary judgment and remand the statute of limitation question to the trial court.

We therefore affirm in part, and vacate and remand in part.

BILLINGS and ORME, JJ., concur.