**2016 UT App 76**

## THE UTAH COURT OF APPEALS

ANNIKA FALKENRATH,
Appellant,
*v.*
CANDELA CORPORATION,
Appellee.

Memorandum Decision
No. 20150050-CA
Filed April 14, 2016

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
The Honorable Paul B. Parker
No. 110901285

Derek A. Coulter and Robert T. Tateoka, Attorneys
for Appellant

Paul M. Belnap and Nicholas E. Dudoich, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE STEPHEN L. ROTH and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

ORME, Judge:

¶1     Appellant Annika Falkenrath received severe burns while
undergoing a laser hair-removal treatment with a machine
manufactured by Candela Corporation and operated by

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

employees of Elase, Inc.[2] Following her injury, Falkenrath sued Elase for negligence, and then, almost five years after sustaining the injury, she joined Candela as a defendant. Because Falkenrath did not bring her cause of action against Candela until after the four-year statute of limitations had run, and because the district court concluded that the equitable discovery rule did not apply, the district court granted summary judgment to Candela. Falkenrath appeals. We affirm.

¶2     The facts underlying this appeal are straightforward and undisputed. Between June 2007 and February 2009, Falkenrath underwent a series of treatments to remove unwanted hair. On February 18, 2009, during what proved to be her final appointment, the technician used higher settings than on the previous occasions because of persistent hair growth, and Falkenrath suffered serious burns. Although Falkenrath was not immediately certain of the *extent* of her injury, she was fully aware that she had suffered an injury following the final treatment.

¶3     Roughly two years later, in January 2011, Falkenrath filed a complaint against Elase alleging negligence on the part of its technician. During discovery in May of the following year, Elase provided Falkenrath with copies of Candela's treatment guidelines. According to Falkenrath, these guidelines negligently failed both to provide instructions for situations in which treatments occurred more than eight weeks apart and to "identify the recommended power settings . . . of the laser under those circumstances." In November 2012, Falkenrath further learned that Elase's employees received in-person training from Candela on the use of the laser equipment.

---

2. Although Elase is a defendant in the case underlying this appeal, it is not a party to the appeal itself, which is before us pursuant to rule 54(b) of the Utah Rules of Civil Procedure.

¶4      Despite receiving Candela's treatment guidelines in May 2012, three years and three months after her injury, and notice of Candela's in-person training of Elase's employees in November 2012, Falkenrath did not seek to amend her complaint to add Candela as a party until December 2013—four years and ten months after sustaining her injury. According to Falkenrath, the additional delay was because she did not receive a report from her expert witness revealing the exact explanation of Candela's negligence until October 2013. After receiving notice of her expert's findings, Falkenrath sought and was granted leave from the court to file an amended complaint naming Candela as a defendant for the first time. Within three months of the filing of Falkenrath's amended complaint, Candela moved for summary judgment, asserting that Falkenrath's claim against it was barred by the four-year statute of limitations. *See* Utah Code Ann. § 78B-2-307(3) (LexisNexis 2012).

¶5      Falkenrath, while acknowledging the applicability of the four-year statute, argued that equitable tolling should extend the limitations period to permit her claim because she did not know she might have a claim against Candela until she received her expert's report. After a hearing, the district court determined that the limitations period began to run on February 18, 2009—the day of Falkenrath's injury. Because the district court further concluded that the exceptional circumstances doctrine did not apply, it ultimately dismissed Falkenrath's claim against Candela as barred by the statute of limitations.

¶6      "The application of the statute of limitations is a question of law, which we review for correctness." *Ottens v. McNeil*, 2010 UT App 237, ¶ 20, 239 P.3d 308. The district court's determination that the equitable discovery rule did not apply, because Falkenrath made no showing of "exceptional circumstances," is also a question of law. *Id.* ¶ 62. In both instances, we "afford[] no deference to the district court's legal conclusions." *State v. Gallegos*, 2007 UT 81, ¶ 8, 171 P.3d 426.

¶7    Falkenrath concedes that the four-year statute of limitations applies to her case.[3] She argues, however, that because she was unaware of Candela's involvement in the treatment she received from Elase until three years after her injury, the statute of limitations should be tolled in her favor. She bases this argument upon the equitable discovery rule, which requires either that (a) the plaintiff demonstrate that she did not know of the cause of action during the statutory limitations period because the defendant acted to conceal its role in the plaintiff's injury or misled the plaintiff as to its role or that (b) "the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the

---

3. At oral argument, Falkenrath raised the argument—which she did not brief—that the statute of limitations for her claim did not even begin to run until her expert witness delivered his report. This argument is premised upon a simple misreading of our Supreme Court's decision in *Williams v. Howard*, 970 P.2d 1282 (Utah 1998). As Falkenrath notes, the Supreme Court stated, "It is generally accepted that a statute of limitations begins to run upon the occurrence of the last event required to form the elements of the cause of action." *Id.* at 1284. Taken by itself this statement could perhaps support Falkenrath's argument that her claim against Candela ripened and the statute of limitations began to run only when she became aware of Candela's alleged negligence, but the very next sentence in *Williams* clarifies that "the 'mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations.'" *Id.* (quoting *Warren v. Provo City Corp.*, 838 P.2d 1125, 1129 (Utah 1992)). Although we decline to address the issue further because it was not briefed, taking these two statements together it is clear that a plaintiff's knowledge of his or her claim is typically not an "occurrence . . . required to form the elements of [his or her] cause of action." *Id.*

discovery of the cause of action." *Berneau v. Martino*, 2009 UT 87, ¶ 23, 223 P.3d 1128 (citation and internal quotation marks omitted). Because Falkenrath specifically disavows any claim of concealment or misleading conduct by Candela, the instant appeal turns on whether Falkenrath can demonstrate exceptional circumstances such that failure to toll the limitations period would be "irrational or unjust." *Id.*

¶8     There are three important contextual elements that inform our resolution of this appeal. First, statutes of limitations, as a matter of public policy, exist because the law has long recognized the need "to prevent the enforcement of stale claims," *Ireland v. Mackintosh*, 61 P. 901, 902 (Utah 1900), in order to "afford[] protection against ancient demands, whether originally well founded or not, and [to] serve[] as a warning against the consequences of [undue delay]," *Kuhn v. Mount*, 44 P. 1036, 1037 (Utah 1896). *See also Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49 (1944) ("Statutes of limitation . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."); *Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1091 (Utah 1989) ("[S]tatutes of limitation are intended to compel the exercise of a right of action within a reasonable time and to suppress stale and fraudulent claims so that claims are advanced while evidence to rebut them is still fresh.").

> [A]t some point in time after the defendant has become liable for damages he must, in fairness, be protected from suit . . . because of the drying up or disappearance of evidence that might have been used in the defense, because of the desirability of security against old claims brought by persons who have slept on their rights, or because the judicial system may not be able to handle stale claims effectively.

4 Am. Jur. *Trials* § 441(2) (2016). Although Utah law allows for exceptions such as equitable tolling, such exceptions are narrow in scope due to the important role of statutes of limitations and "should not be used simply to rescue litigants who have inexcusably and unreasonably slept on their rights, but rather to prevent the expiration of claims to litigants who, through no fault of their own, have been unable to assert their rights within the limitations period." *Beaver County v. Utah State Tax Comm'n*, 2006 UT 6, ¶ 32, 128 P.3d 1187.

¶9　　Moreover, the four-year statute of limitations at issue in the instant case, Utah Code Ann. § 78B-2-307(3) (LexisNexis 2012), is somewhat atypical. Indeed, although at least one state matches Utah's general four-year statute of limitations, *see* Neb. Rev. Stat. § 25-207(3) (2008), four years in which to bring a tort action is actually quite liberal as compared to the analogous federal statute of limitations, *see* 28 U.S.C. § 2401(b) (2012) (providing a two-year statute of limitations for tort actions against the federal government), and the statutes adopted by other states. Many states, for example, provide only a two-year statute of limitations for claims of personal injury or tort actions generally. *See, e.g.*, Ala. Code § 6-2-38(l) (2014); Colo. Rev. Stat. § 13-80-102(1)(a) (LexisNexis 2015); Conn. Gen. Stat. Ann. § 52-584 (West 2016); Haw. Rev. Stat. § 657-7 (1993); Kan. Stat. Ann. § 60-513(a)(4) (2005); Minn. Stat. § 541.07(1) (2014); Nev. Rev. Stat. Ann. § 11.190(4)(e) (LexisNexis Supp. 2013). Other states are slightly more generous, allowing for three years, *see, e.g.*, N.H. Rev. Stat. Ann. § 508:4(1) (2010); 9 R.I. Gen. Laws § 9-1-14(b) (2012), while still others, such as Kentucky, are stingier, providing only a one-year limitations period, *see, e.g.*, Ky. Rev. Stat. Ann. § 413.140(1)(a) (LexisNexis Supp. 2014). And within the constellation of Utah's statutes of limitations, four years for a routine tort claim is among the most generous. *See, e.g.*, Utah Code Ann. § 78B-2-302 (providing a one-year statute of limitations for certain claims, including enumerated torts); *id.* § 78B-2-304 (imposing two-year limitations period for certain claims, including wrongful death); *id.* § 78B-2-305 (providing a

three-year statute of limitations for, inter alia, enumerated property torts); *id.* § 78B-3-404 (imposing a two-year statute of limitations for medical malpractice claims, unless the claim is premised upon the presence of "a foreign object wrongfully left within a patient's body," in which case a one-year statute of limitations applies); *id.* § 78B-6-706 (establishing a two-year statute of limitations for actions premised upon products liability).

¶10    Second, when a person is injured by a machine, by far the most common causes are operator error, some problem with the machine, or some combination of the two. *Cf. Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 251 (Utah Ct. App. 1993) (describing a situation in which an employee injured while using a dough mixing machine sued both the company that employed the machine in its food processing plant and the manufacturer of the machine). Thus, even were we to accept Falkenrath's argument that she was ignorant of the existence of her potential cause of action against Candela until hearing from her expert, it is clear that a personal injury caused by the operation of a machine will routinely entail possible liability on the part of both the operator and the manufacturer of the machine. *Id.* at 253 ("'A plaintiff does not have enough information to sue until he knows that he has been injured, *he knows the identity of the maker of the product*, and he knows that the product had a causal relation to his injury.'") (emphasis in original) (quoting *Hickman v. Grover*, 358 S.E.2d 810, 813–14 (W. Va. 1987)). Such a scenario is not an unusual circumstance, much less an "exceptional" one for which the statute of limitations should be tolled. *See Hom v. Utah Dep't of Pub. Safety*, 962 P.2d 95, 102 (Utah Ct. App. 1998).

¶11    Third, Falkenrath discovered Candela's existence and involvement in May 2012—more than a *year* before she filed her motion to amend her complaint to add Candela as a defendant in her action and nine months before the four-year statute of limitations expired. And in November 2012, still three months before the four-year limitations period expired, Falkenrath

learned of Candela's in-person training sessions with Elase's staff.

¶12    Because Falkenrath conceded that Candela did not engage in any misleading conduct or fraudulent behavior, the inherently narrow scope of exceptions to statutes of limitations requires Falkenrath to demonstrate that the instant case involved exceptional circumstances to invoke equitable tolling in her favor. *See Berneau v. Martino*, 2009 UT 87, ¶ 23, 223 P.3d 1128. Indeed, any other rule would undermine the essential role played by statutes of limitations in promoting justice and fairness. *See supra* ¶ 8. But Falkenrath has not persuaded us that her claim is anything but an ordinary personal injury claim in which one (or both) of two rather obvious actors—operator and manufacturer—may bear responsibility for a plaintiff's injuries. *See Aragon*, 857 P.2d at 251, 253. And it is ultimately irrelevant whether Falkenrath and her counsel lacked the technical expertise without consulting an expert to determine whether Candela was negligent, because there was "sufficient information to put [Falkenrath] on notice to make further inquiry" such that her failure to do so within the statutory limitations period bars her claims against Candela. *See Hom*, 962 P.2d at 102 (ellipses, citation, and internal quotation marks omitted). *Cf. Brown v. State*, 2015 UT App 254, ¶ 9, 361 P.3d 124 ("[T]he period in which to file 'begins when the [party] knows (or through diligence could discover) the important facts, not when the [party] recognizes their legal significance.'") (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). The district court therefore properly granted summary judgment to Candela.

¶13    Affirmed.

───────────