NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HELEN SCHIRMER, *Plaintiff/Appellant*,

*v.*

AVALON CARE CENTER – SCOTTSDALE LLC, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 19-0310
FILED 7-14-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-055125
The Honorable Theodore Campagnolo, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Jeffrey L. Victor, P.C., Scottsdale
By Jeffrey L. Victor
*Counsel for Plaintiff/Appellant*

Anderson & Karrenburg, Salt Lake City, UT
By Craig H. Howe, Blake D. Miller *Pro Hac Vice*
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Randall M. Howe[1] joined.

---

**W I L L I A M S**, Judge:

**¶1**        Helen Schirmer ("Helen") appeals the superior court's order granting summary judgment to all defendants. For reasons stated below, we affirm the dismissal of the claims based upon the negligence of the nursing staff but reverse the dismissal of the remaining claims and remand for a jury to determine if the statute of limitations bars those claims.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        In May 2014, Carl Schirmer ("Carl"), Helen's husband, was admitted to a nursing center, Avalon Care Center-Scottsdale, L.L.C., ("A CC-Scottsdale") dba Avalon Care Center-Shadow Mountain ("ACC-Shadow Mountain"). Upon admission, Carl signed an agreement listing ACC-Shadow Mountain as the "care center," which we refer to as "the Avalon facility." While at the Avalon facility, Carl fell and fractured his hip. As a result, he was hospitalized and later died on August 20, 2014, allegedly from complications related to the hip fracture.

**¶3**        In January 2015, Helen's attorney wrote to the Avalon facility's attorney asking to discuss Helen's claim that the nursing staff's negligence caused Carl's death. Helen's attorney followed up with a second letter that included an expert opinion from Wendy Thomason, R.N., supporting the negligence claim.

**¶4**        On July 8, 2015, Helen filed a complaint against Avalon Health Care, Inc. ("AHCI"), dba ACC-Shadow Mountain and fictitious defendants, asserting claims arising from Carl's death. AHCI, a Utah corporation, removed that action to federal court. The federal district court granted AHCI summary judgment because it was not sufficiently involved in providing care to Carl to impose liability for any of the alleged claims.

---

[1] Judge Randall M. Howe replaces the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge Howe has read the briefs, reviewed the record, and watched the recording of the March 18, 2020 oral argument.

The Ninth Circuit Court of Appeals affirmed this decision. *Schirmer v. Avalon Health Care, Inc.*, 772 Fed. Appx. 546, 547 (9th Cir. 2019).

¶5            On July 14, 2017, after the federal court dismissed the first action, Helen filed a complaint naming ACC-Scottsdale dba ACC-Shadow Mountain; Avalon Health Care Centers, L.L.C. and Avalon Health Care Management of Arizona, L.L.C. ("the corporate defendants"); and individual defendants, Douglas Daudelin, the Avalon facility regional director; Michael B. Morris, an Avalon facility administrator; Vanessa E. Holmes, the director of nursing for the Avalon facility; nurses LaShun McSwain and Kyle Mader; and certified nursing assistant Chad Pinkstaff. As in the 2015 complaint, the 2017 complaint alleged negligence, wrongful death, violation of the Adult Protective Services Act ("APSA") A.R.S. § 46-455(B), loss of consortium, and punitive damages. The 2017 complaint also alleged negligent hiring and management in the Avalon facility.

¶6            Defendants moved for summary judgment, arguing the statute of limitations barred the action because the complaint was filed more than two years after Helen's claims accrued. According to Defendants, Helen was aware of the wrongful death and loss of consortium claims by January 2015, when her expert opined the nursing staff was negligent, and the statute of limitations began to run on the negligence claims, at the latest, on June 4, 2015, when Helen was appointed personal representative of Carl's estate. In response, Helen argued the statute of limitations did not begin to run until early 2016, when she learned the correct name of the legal entity responsible for Carl's injuries, the names of the individual nurses, and the facts giving rise to her claims for administrative negligence.

¶7            The superior court granted Defendants judgment on all claims, finding Helen knew the estate had a cause of action against the nursing home and its staff no later than December 31, 2014, when Helen's expert provided her opinion. The court concluded Helen had a duty to investigate and determine the correct legal entity, and name that party in the federal case. The court also found that even if Helen did not know the names of the administrators until the discovery in the federal action, she had a duty to amend the 2015 complaint. Helen timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶8            Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment

3

as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves,* 166 Ariz. 301, 309 (1990). We review the superior court's grant of summary judgment *de novo,* considering the facts and any inferences drawn from those facts in the light most favorable to the party opposing summary judgment. *Tierra Ranchos Homeowners Ass'n v. Kitchukov,* 216 Ariz. 195, 199, ¶ 15 (App. 2007).

**¶9**         The parties do not dispute that Helen had two years after her claims accrued to file an action. *See* A.R.S. §§ 12-542 and 46-455(K). Helen did not file the second complaint within two years of Carl's death or her appointment as personal representative of his estate, but contends it was, nevertheless, timely because her claims did not accrue until early 2016 under the discovery rule. To that end, Helen first argues the corporate defendants concealed and misrepresented the true identity of the legal entity that provided Carl's care and other relevant facts, thereby tolling the accrual date of her claims; and second, the 2017 complaint states independent claims for negligent hiring and management of the Avalon facility, and she did not discover the facts giving rise to those claims until March 2016.

**¶10**        The statute of limitations "protect[s] defendants and courts from stale claims where plaintiffs have slept on their rights." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,* 182 Ariz. 586, 590 (1995). Because a party is not allowed to "sleep on [their] rights" regarding an unknown claim, *Doe v. Roe,* 191 Ariz. 313, 322, ¶ 29 (1998), the discovery rule provides that "a cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct," *Anson v. Am. Motors Corp.,* 155 Ariz. 420, 423 (App. 1987). Thus, "[a] cause of action does not accrue until the plaintiff knows *or should have known* of both the *what* and the *who* elements of causation." *Lawhon v. L.B.J. Institutional Supply, Inc.,* 159 Ariz. 179, 183 (App. 1988) (first emphasis added). A plaintiff must also have a "reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault." *Walk v. Ring,* 202 Ariz. 310, 316, ¶ 22 (2002). Determining when a plaintiff should have known the *who* and *what* elements of a claim is usually a question of fact for the jury, and "summary judgment is warranted only if the failure to go forward and investigate is not reasonably justified." *Id.* at ¶ 23 (citing *Doe,* 191 Ariz. at 323, ¶ 32). A plaintiff has the burden of convincing the jury the discovery rule applies to delay the accrual of her claims. *Ulibarri v. Gerstenberger,* 178 Ariz. 151, 155 (App. 1993).

I. *When Helen Should Have Discovered the Correct Name of the Legal Entity Responsible for Carl's Care Is a Question of Fact*

¶11 The 2015 complaint named the entities listed in the medical records: AHCI and ACC-Shadow Mountain. Helen argues she did not learn ACC-Scottsdale was the correct legal entity responsible for her claims until Defendants provided discovery in the federal litigation. Defendants concede they did not identify the legal name of ACC-Scottsdale until January 21, 2016, during discovery in the course of the federal litigation. However, Defendants argue Helen was aware of her claim and had a duty to investigate the correct legal entity when her attorney sent a letter and an expert opinion asserting negligence by "ACC-Shadow Mountain."

¶12 The admission documents and the medical records available to Helen state the care provider was ACC-Shadow Mountain or AHCI. Helen contends that by using these corporate names, the documents actively misled her as to the correct legal entity. Defendants deny the forms actively concealed or affirmatively misrepresented information because the correct legal name was available on the Arizona Corporation Commission's public website, and Helen should be deemed to know the contents of public records. *See Transamerica Ins. Co. v. Trout*, 145 Ariz. 355, 358 (App. 1985); *Ruth v. Unifund CCR Partners*, 604 F. 3d 908 (6th Cir. 2010).

¶13 Defendants also argue Helen was on notice to investigate AHCI's true identity because AHCI had denied it provided care to Carl as a defense in the federal litigation. Helen counters that Defendants' federal pleadings were misleading and insufficient to put her on actual notice that she had named the incorrect legal entity. Helen alleged Defendants had failed to disclose the name of the entity that had discoverable information in its initial disclosures, as required by Federal Rule of Civil Procedure 26(a). This obligation existed even if Helen did not specifically request it, Fed. R. Civ. P. 26(a)(1)(A)(i), and an evasive disclosure constitutes a failure to disclose, Fed. R. Civ. P. 37(a)(4). [2]

¶14 Helen argues that Defendants conduct constitutes fraudulent concealment, which relieved her of the duty to investigate until she discovered or was put on notice of facts giving rise to the concealment. *Walk*, 202 Ariz. at 319, ¶ 35 ("actual knowledge standard applies to

---

[2] We recently noted the difficulty that can exist in determining the correct legal entity to name in a lawsuit given "[t]he complicated structuring [of care facilities] consisting of limited liability companies and limited partnerships . . . ." *Scott v. Kemp*, 248 Ariz. 380, ¶ 2 (App. 2020).

triggering the statute of limitations" when concealment has occurred). Therefore, Helen asserts her late discovery was reasonable because she had no reason to suspect she had named the incorrect legal entity in the federal litigation. Whether fraudulent concealment occurred is an issue of fact for the jury. *Anson*, 155 Ariz. at 429. Even if Defendants' federal pleadings should have put Helen on notice to investigate the existence of a different corporate entity than was named, Helen filed the 2017 complaint within two years of Defendant's August 2015 answer; that answer contained AHCI's denial of responsibility, which Defendants contend should have put Helen on notice.

¶15        The question then becomes whether Helen reasonably relied upon the medical records available to her in determining who to sue, or if she had an obligation to further investigate the name of the entity *before* Defendants may have put her on notice she had sued the wrong entity. As discussed, *supra*, ¶ 10, "whether a reasonable person would have been on notice to investigate" is usually a question of fact for the jury, *Walk*, 202 Ariz. at 316, ¶ 24.

¶16        Defendants contend that Helen's duty to investigate the correct legal name is not, at its core, a factual question because Defendants did not make affirmative assurances as in *Walk* or *Anson*. While the statements in the medical records and Defendant's answer were not direct misrepresentations, the question is whether Helen had reason to know she should be looking for an alternative legal entity based upon the medical records available to her and Defendants' conduct during the federal litigation. *Walk*, 202 Ariz. at 316, ¶ 24. On this record, a jury must resolve this material issue.

¶17        Finally, Helen's knowledge of the correct legal entity before the federal litigation was dismissed does not render the 2017 complaint untimely. As Defendants acknowledged, Helen could have sought to amend the complaint in the federal court *or* filed a timely separate action against the correct entity. By filing the 2017 complaint, Helen chose the latter. It is for a jury to decide if that complaint was timely.

II.        *As a Matter of Law, Helen Should Have Known or Discovered the Names of the Individual Nursing Staff Members*

¶18        Helen contends the 2015 complaint alleged nursing negligence without knowing which particular nurses were involved. According to Helen, the individual nurses' names were not available until the discovery phase of the federal litigation because the patient medical

records did not reveal which nurses, if any, committed a negligent act, and Defendants concealed the Incident Fall Reports that would have provided that information.

**¶19** Even if Helen did not know the individual nurses' names until March 2016, she was aware of alleged negligence by nursing "staff" in January 2015 based upon her expert's opinion. Thus, by January 2015, Helen was on notice to investigate and determine the names of the individual nurses she alleged were negligent. The discovery rule does not allow a party "to hide behind its ignorance when reasonable investigation would have alerted it to the claim." *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 12 (App. 2010). A plaintiff has an affirmative duty of due diligence to investigate her potential claims. *Id.* (citing *Doe*, 191 Ariz. at 324, ¶ 37).

**¶20** In response to Defendants' summary judgment motion, Helen needed to show that in the exercise of reasonable diligence, she was unable to discover the nurses' identities within the limitations period. *See, e.g.*, *Doe*, 191 Ariz. at 323, ¶¶ 32-33. Helen had Carl's "medical records," but she did not learn that separate "Fall Incident Reports" existed until the discovery phase of the federal litigation. Helen contends Defendants concealed the Fall Incident Reports which prevented her from obtaining this information. However, these reports have never been disclosed.

**¶21** Knowledge of the existence of a claim does not necessarily require knowledge of the specific Defendants' identities. *Lawhon*, 159 Ariz. at 181. Yet Helen knew of negligent conduct by at least a single nurse, and therefore, had a duty to investigate the identity of that person. Even without the Fall Incident Reports, Helen discovered which witnesses to depose within the federal litigation, including two of the nurses named in the 2017 complaint. Having done so, Helen provided no reason why she could not have determined the names of the individual nurses before the limitations period expired. And although information contained within the Fall Incident Reports was relevant, it was clearly not the only way Helen could have determined the nurses' names. Therefore, any concealment of these reports did not preclude Helen from otherwise investigating or asserting her claims. As a matter of law, Helen had sufficient knowledge to determine the identity of the individual nurses before the statute of limitations expired, but failed to do so. Helen's window for a negligence claim against those nurses has closed.

III.     *When Helen Discovered She Had a Claim for the Independent Negligence of the Corporate Defendants and Administrators Is a Question of Fact*

¶22          The superior court found Helen learned of the administrators' alleged negligence during the federal litigation and, therefore, should have raised this claim within that case. Defendants contend Helen was aware, or should have been aware, of these claims in January 2015 when her expert provided an opinion that the nursing staff was negligent.

¶23          Helen's claims against the corporate defendants and individual administrators were based upon conduct distinct from the conduct giving rise to the nursing staff negligence claim. Helen's nursing expert addressed only nursing negligence and did not consider or suggest any negligence by the administrators or corporate defendants. According to Helen, she did not learn she also had a claim for the negligent administration of the Avalon facility until she took depositions within the federal litigation and retained an expert in nursing home administration. Helen's expert on nursing home administration stated that she learned facts giving rise to the claims for the administrator's negligence only after the depositions in the federal litigation. Only then did Helen learn the Avalon facility was understaffed, had insufficient equipment, and lacked an assistant director of nursing.[3]

¶24          Defendants contend Helen knew of these claims at least by September 2015, when she notified Defendants that she planned to depose the "Director of Nursing" and an "Administrator" in the federal litigation. The fact that Helen's joint case management report listed the unnamed Director of Nursing and an Administrator does not establish, as a matter of law, that she knew or should have known sufficient facts giving rise to the claims for negligent hiring and management. In any event, Helen filed the 2017 complaint within two years of that date.

¶25          Defendants also argue the 2017 complaint does not allege any new facts supporting separate claims of "administrative negligence." However, the 2017 complaint contained new allegations that Defendants

---

[3] Defendants contend Helen's experts' affidavits are deficient, and, in any event, they fail to create a question of fact. As discussed above, the affidavit of the expert on nursing home administration raised a question of fact whether Helen, in the exercise of reasonable diligence, could have discovered earlier the claim for negligent hiring and management. Thus, a jury must decide this issue. Defendants can raise any objections to the affidavits they deem appropriate in the course of trial.

were liable for the hiring and management of their employees and agents, exercised control and management over the facility, and failed to "manage, control and/or administer" the facility as required by law, proximately causing Carl's death. The 2017 complaint also alleged that Daudelin and Morris, as regional director and administrator respectively, breached various duties owed to Carl. Count Three alleged a violation of the APSA (A.R.S. § 46-455), and added specific allegations that Defendants consciously decided to "promote profits instead of providing the legally mandated care" and violated the APSA by breaching the "aforementioned duties." These allegations were not in the 2015 complaint.

¶26    Helen's negligent hiring and management claims are based upon the direct action or inaction of the corporate defendants and administrators. As such, they are direct theories of liability and independent from any vicarious liability resulting from the principal-agent relationship between the nurses and the corporate defendants. *See Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 441-42, ¶¶ 11-12 (2018). Helen's evidence is sufficient to create a factual question when she first knew or should have known of the facts giving rise to these claims. Therefore, summary judgment was improper.

¶27    Defendants again argue that Helen could have amended the 2015 complaint or filed a separate timely action upon learning facts to support the separate claims of negligent hiring and management. The 2017 complaint purports to do just that.

IV.    *Vicarious Liability*

¶28    Because the negligence claims against the nurses are time-barred, the corporate defendants cannot be found vicariously liable for those claims. *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 574 (1986) ("In cases of derivative liability, a judgment or dismissal in favor of the servant relieves the master of liability."). However, dismissal of the claims against the nurses does not require dismissal of the independent claims against the corporate defendants or administrators for direct liability for any negligent hiring and management. *Kopp*, 244 Ariz. at 441-42, ¶¶ 11-12.

**CONCLUSION**

¶29    We affirm the dismissal of the claims against nurses McSwain, Pinkstaff, and Mader and the dismissal of the claims against the corporate defendants based upon the vicarious liability of those defendants. We reverse the entry of summary judgment against administrators, Daudelin, Morris, and Holmes and the corporate defendants for claims based upon

their direct liability for negligent hiring and management. On remand, a jury must determine when these claims accrued and whether Helen's complaint was filed within the statute of limitations.

